ALBERT W. SMITH, Adm'r

*vs.*

BOOTH BROTHERS & HURRICANE ISLE GRANITE COMPANY.

Knox.    Opinion November 12, 1914.

*Assignment of Mortgage.    Boundaries.    Deeds.    Delivery.    Exceptions.*
*Mortgage.    Possession.    Prescription of Delivery of Deed.*
*Record.    Title.*

1.  A new trial will not be granted on the ground of newly discovered evidence, when it could have been discovered before the trial by the exercise of due diligence.

2.  The newly discovered evidence in this case does not have such probative force as to warrant the granting of a new trial.

3.  A deed by a mortgagee, containing also an assignment of the mortgage debt, conveys the mortgagee's title.

4.  A deed by a mortgagee out of possession, not accompanied by a transfer or assignment of the mortgage debt, conveys no title.

5.  A mortgagee by taking possession under his mortgage acquires a seisin in fact, and an interest in the land itself, which he can convey, if he continues in possession.

6.  A seisin once acquired is presumed to continue until it is shown that there has been an ouster or disseizin, or an abandonment.

7.  Mere non-user is not enough to warrant a finding of abandonment.

8.  The owner of land may retain the legal possession of land though he does not remain upon it, and such possession may be regarded as actual, as distinguished from constructive.

9.  When a mortgagee has taken possession, his title, so acquired is presumed to continue until the contrary is shown.

10.  An owner having granted all the granite in his farm, his subsequent deed of a tract of land by metes and bounds which included the farm, and perhaps more, is not admissible to show the limits of the farm.    But if the later deed conveyed more than the original farm, the grantee became the owner of all the granite outside of the farm, and a trespasser who is sued for one-fifth only of the granite is not prejudiced by the admission of the deed, which is a muniment of the plaintiff's title.

11. Exceptions to the admission of irrevelant, but harmless, testimony will not be sustained.

12. The payment of taxes assessed on land is not evidence of possession. It is evidence of a claim. But where the fact of possession is indisputable upon the other evidence, the admission of a tax assessment and payment offered to show possession is harmless.

13. The granting of a motion to strike out testimony is usually discretionary. The discretion was not unreasonably exercised in this case.

14. How long and how far cross-examination of a witness for the purpose of impeaching him shall be continued lies within the discretion of the presiding Justice.

15. That it is found to be the ordinary thing that land overruns the measures given in old deeds and old surveys may be shown to explain apparent discrepancies between old surveys and measurements and what are claimed to be monuments marking true lines and corners; but not to lengthen certain and definite measurements in old deeds.

16. Exceptions to refusals to instruct except as given in the charge cannot be sustained unless the charge is made a part of the bill of exceptions. In such case, it must be presumed that the instructions given were adequate and correct.

17. Unless a charge is made a part of a bill of exceptions, the court cannot examine or consider it, although it may be printed as a part of the record.

18. Under a motion for a new trial, it is always to be presumed that the charge was appropriate and correct; and the practice, sometimes followed, of printing the charge has no warrant.

On motion for new trial and exceptions by the defendant. Exceptions and motions overruled.

This is assumpsit to recover the sum of $2800 for one-fifth of stumpage for granite claimed to have been taken by defendant from the quarry and pasture adjoining the quarry owned by defendant at Long Cove in St. George, Maine. The defendant pleaded the general issue. The jury rendered a verdict for the plaintiff of $2511.60 and the defendant filed a general motion for a new trial and a motion for a new trial on the ground of newly discovered evidence. The defendant had numerous exceptions, which are fully considered in the opinion.

The case is stated in the opinion.

*A. S. Littlefield,* for plaintiff.

*C. E. Littlefield, C. W. Littlefield, and Frank H. Ingraham,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, JJ.

SAVAGE, C. J. Assumpsit by the administrator of James M. Smith to recover one-fifth of the stumpage for granite alleged to have been taken by the defendant from the quarry and pasture adjoining the quarry owned by the defendant at Long Cove in St. George, Maine. The trial resulted in a verdict for the plaintiff, and the case is brought here by the defendant on a general motion for a new trial, a motion for a new trial on the ground of newly discovered evidence, and on numerous exceptions.

The principal issues involved are these. The plaintiff in the first place claims that James M. Smith, his intestate, in whose lifetime the granite was taken by the defendant, had a title by deed to an undivided fifth part of the granite in the premises in question. This is denied by the defendant on two grounds, first, that James M. Smith never had any title, and secondly, if he ever had title, he had conveyed it to his wife, Annie S. Smith, before the defendant's acts complained of. The plaintiff replies that even if James M. Smith had no valid title by deed, yet he had such a possessory right as would entitle him, or his administrator, to maintain this action against one having no title or right of possession. He says further that the deed of James M. Smith to Annie S. Smith was never delivered to her, and therefore that no title passed. There is also a dispute as to the location of the northern boundary line of the tract on which the quarrying rights are claimed to have belonged to James M. Smith. These are the issues.

We will first consider the contention that long before any granite was taken by it, the plaintiff's intestate conveyed to Annie S. Smith, his wife, whatever interest he had in the granite which is now the subject matter of dispute. For if the motion should be sustained on that ground, it will not be necessary to consider the case further. If the plaintiff's intestate had conveyed all his title before the time the granite was taken, the action cannot be maintained.

That a deed to that effect was executed and acknowledged by James M. Smith is not denied. It was dated February 4, 1882. As the defendant set up this deed to defeat the plaintiff's title, it was incumbent on it to show that it became effective by delivery. It is denied that it was ever delivered to the grantee or to any one for her use. Mrs. Smith, the grantee, testified that it was never delivered, and

that she never knew of its existence. The jury, by direction, made a special finding which was to the effect that the deed was never delivered. As will be shown more particularly hereafter, Alvin H. Fogg and Laurettus E. Fogg were tenants in common, each of one-fifth, with James M. Smith, of the unquarried granite. It appears that on February 3 and 4, 1882, the Foggs separately conveyed their interests to Annie S. Smith, and she executed mortgages to them respectively of the same interests. February 4, 1882, as stated, her husband executed a deed to her of his one-fifth interest, but did not take back any mortgage. All these deeds to Mrs. Smith were recorded, and were found by the defendant's attorneys on the files of the Registry of Deeds, a short time prior to the trial in this case, which was 31 years after the deeds were executed, and several years after Mr. Smith's death.

It is not shown that the grantee assented to the delivery of the deed for record, or that she knew of its existence. She denies it. It is not shown, unless by inference, who delivered it to the registry. It is not shown that there was any change in the use and occupation of the property named in the deed. The defendant relies upon a presumption of delivery arising from the fact that it is recorded. Its counsel in their brief, quoting from the note to *Munro* v. *Bowles*, 54 L. R. A., 884, say that "the general rule undoubtedly is that a presumption of delivery arises from the fact that a deed has been recorded."

We do not need to discuss now the accuracy of this statement. Assuming, but not deciding, it to be correct in the broadest sense, and that the record of a deed is presumptive evidence of its delivery, it is only a presumption, and the presumption is rebuttable. There is rebutting evidence in this case, and it is of such a character as to warrant the finding that the deed was never delivered. Accordingly the general motion for a new trial cannot be sustained on this ground.

But the defendant has filed a motion for a new trial on the ground of newly discovered evidence of the delivery of the deed. The newly discovered evidence is that of the attorney who drafted the deed, but who did not take the acknowledgment of it. His testimony is as follows: "It is my recollection that James M. Smith was in somewhat of a hurry when he instructed me to make out the deed from him to Annie S. Smith, and did not wait in the office to have the deed written; that he afterwards called for the deed or that it was mailed

to him by me to St. George where he then lived.   While I am not able to state that I now have a specific and independent recollection of instructing Mr. Smith as to the fact that in order, that the deed to Annie S. Smith might be effective and valid it must be delivered, and what was necessary for him to do in order to accomplish a delivery, I feel morally certain that I told him that to make the deed valid and effective it must be delivered to the grantee  .  .  .  .  or to someone for her with her knowledge and assent, as it was and now is my unvarying and universal practice to give to parties for whom I draw deeds specific and careful instructions as to what it was necessary for them to do in order to accomplish a delivery to the grantee."

This latter motion cannot prevail for two reasons.  First, the testimony could have been discovered by the exercise of due diligence before the trial.   The defendant's attorneys discovered the deed before the trial in the Registry of Deeds.   They knew the scrivener and knew where he was.   They should have anticipated that the question of delivery would arise in the case of a deed found under such circumstances.   *Blake* v. *Madigan,* 65 Maine, 522; *Maynell* v. *Sullivan,* 67 Maine, 314.   A new trial will not be granted on the ground of newly discovered evidence, when it could have been discovered before the trial by the exercise of due diligence.   *Howard* v. *Grover,* 28 Maine, 97; *Blake* v. *Madigan,* 65 Maine, 522; *Kimball* v. *Hilton,* 92 Maine, 214; *Berry* v. *Ross,* 94 Maine, 270.   Moreover, when the point of non-delivery was made, the defendant, if surprised, might have asked for a continuance on that ground.   It asked for none.   Secondly, the newly discovered evidence, if admissible, does not have such probative force as to warrant the granting of the motion.   *Parsons* v. *L. B. & B. St. Ry.,* 96 Maine, 503.

We will next examine the exceptions, thirty-one in number.   The evidence is made a part of the bill of exceptions, and the exceptions must be considered in the light of the evidence.   Hence we make now a brief review of such of the facts shown as bear upon the exceptions. And first as to the title of the plaintiff's intestate to the granite by deed.   The case shows that on July 1, 1823, John Ruggles conveyed to Joshua Smalley a strip of land several hundred rods long extending in a general northwesterly-southeasterly direction, and described as forty-four rods wide.   The title to this land afterwards came to Archelaus Smalley, and the tract constituted what was known as the Archelaus Smalley farm.   The location of the northerly side line of

this tract is one of the questions in dispute in this case. The exact location of the southerly side line is also in dispute; but it is sufficient now to say that the tract was bounded on the south by land which now belongs to L. W. Seavey.

In 1836, Archelaus Smalley conveyed to Sherman Converse "all the granite on and in the farm on which I now live in St. George," reserving the wood, soil and buildings. This was the farm already referred to. Afterwards in the same year, 1836, Converse mortgaged to John S. Abbott, "all my right, title and interest in and to all of the granite" on and in the same farm, to secure the payment of notes amounting to $15,000. March 16, 1862, Abbott gave a quitclaim deed of the same interest in the granite to Alvin H. Fogg. This deed contained an assignment of the mortgage debt, and therefore conveyed the grantor's interest as mortgagee, *Lunt* v. *Lunt*, 71 Maine, 377. On March 10, 1873, Alvin H. Fogg gave a quitclaim of four undivided fifths of all his right, title and interest in the granite on and in the Archelaus Smalley farm to James M. Smith, Lauretus Fogg, Joseph Hume and William Boiss, one-fifth part to each, in common and undivided. No assignment was made of any part of the mortgage debt, or of the grantor's interest therein.

The plaintiff was permitted to introduce, subject to objection and exception, a quitclaim deed, dated June 4, 1867, from Archelaus Smalley to John M. Fuller of all that part of the Smalley farm which contained the granite now in question, but the granite was excepted from the conveyance. In this deed the strip conveyed, being the southeasterly end of the original Smalley farm, was described as being about forty-seven rods wide at the shore end and about forty-six and one-half rods wide at the other end; and bounded on the north by other land of the grantor, Archelaus Smalley; also, a quitclaim deed, dated June 1, 1888, of the same premises, with the same description, from Alfred W. Fuller to John A. Fuller. These Fullers were the heirs of John M. Fuller; also, a warranty deed, dated September 16, 1889, of the same premises, from John A. Fuller to James M. Smith. This deed did not except the granite, but did reserve the wood. But it is admitted that Smith knew that the granite on the Smalley farm had been previously conveyed. He was a grantee of one-fifth of it. The description in this deed is similar to the two previous ones, except that it describes the northerly side line as beginning "at land of Booth Brothers & Hurricane Granite Co., and

thence E. S. E. by said Booth Brothers & Hurricane Granite Co. southerly line." Therefore the land claimed to belong to Smith is bounded on the north by the defendant's land, wherever the line may be. The defendant did not introduce its title deed.

The undisputed testimony shows that after the quitclaim deed of the granite, with assignment of the mortgage indebtedness, from John A. Abbott, mortgagees, to Alvin H. Fogg, Fogg in 1863 or 1864, or both, entered upon the premises and carried on some sort of a granite quarrying operation. He then went to Clark's Island, and it does not appear that any further quarrying was done until 1873. It is shown, subject to objection and exceptions, that on the same day, March 10, 1873, that Alvin H. Fogg gave a quitclaim deed of four undivided fifths of the granite to James M. Smith and three others, that the grantor and grantees formed a co-partnership, and it is not disputed that the co-partnership entered upon the premises and conducted quarrying operations thereon, for a year or two.

The disputed line is the northerly line of the Archelaus Smalley farm. In the original ancient deed, the width of the farm, northerly and southerly, was given as 44 rods. The granite conveyed to Converse and mortgaged by him to Abbott was all within that farm. If the northerly line of the farm as claimed by the defendant is the true one, and if the southerly or Seavey line is where the defendant claims, the farm in the region of the dispute was 42 rods and 7 feet wide. If the northerly and southerly lines are where the plaintiff claims, the farm was about 46½ rods wide. On the face of the earth the northerly line claimed by the plaintiff is about six rods northerly of that claimed by the defendant. And from this six rods strip, much of the granite sued for was taken. The foregoing statement of facts is practically undisputed.

It is now well settled in this State that a deed by a mortgagee out of possession, unaccompanied by a transfer or assignment of the mortgage indebtedness conveys no title. *Lunt* v. *Lunt*, 71 Maine, 377; *Wyman* v. *Porter*, 108 Maine, 110; *Farnsworth* v. *Kimball*, 112 Maine, 238.

Under this doctrine the defendant claims that as matter of fact Alvin H. Fogg was not in possession of the mortgaged granite at the time he gave a quitclaim deed to Smith and the others, and that as there was no transfer of the mortgage debt, no title passed to Smith. Nine instructions were requested of the court upon this subject, all of

which were refused, except as they had been given in the charge. The requested instructions appear to have been based upon a contention, expressed in several ways, that Fogg's deed to Smith did not convey any title unless Fogg was in actual possession of the granite when the deed was made, that the possession must have been continuous, and that Fogg had previously abandoned the quarry.

The exceptions to the refusals to instruct cannot be sustained. The refusals were made "except as given in the charge." The charge is not made a part of the bill of exceptions. The rule is universal that in such case it must be presumed that the instructions actually given were adequate and correct. *Marshall* v. *Oakes*, 51 Maine, 308; *Hearn* v. *Shaw*, 72 Maine, 187. Without incorporating the charge in its bill of exceptions the defendant is necessarily unable to show that it was aggrieved by the refusal to instruct. *Fletcher* v. *Clarke*, 29 Maine, 485. To sustain exceptions it must be shown that the ruling complained of was both erroneous and prejudicial. *Smith* v. *Smith*, 993 Maine, 253, and many other cases.

It is true that the charge of the presiding Justice was printed in the record of this case, but it was printed without warrant. It is not properly a part of the record, even under the motion. Under a motion it is always to be presumed that the charge was appropriate and correct; and the practice, sometimes followed, of printing the charge has no warrant. The charge may be made a part of the bill of exceptions, but unless it is so made, the court has no right to examine or consider it. It has no authority to travel outside of the bill of exceptions itself. *Hunter* v. *Heath*, 76 Maine, 219; *Jones* v. *Jones*, 101 Maine, 447.

The subject matter of the above mentioned requested instructions, however, is open for consideration in connection with the exception to the admission of the quitclaim deed from Fogg to Smith and others. The defendant's contention to state it again, is that the deed of Fogg without proof of his being in actual possession at the time, conveyed no title, and that in fact Fogg was not shown to be in possession, but that the evidence showed that he had abandoned the property. It is true that the deed was only one step in the proof of the plaintiff's title, and that the court in his discretion might admit the deed first and receive the proof of possession afterwards. Still we think we should discuss the exception in a broad way, for on the admissibility of this deed before or after the proof of possession depends the title of the plaintiff's intestate to the granite on the Smalley farm.

Fogg having taken a deed from the mortgagee with an assignment of the debt stood in the steps of the mortgagee. He had a mortgagee's right. He was in effect a mortgagee. He owned the debt, and held the mortgage title as security. Being a mortgagee, he could not, if out of possession, transfer the mortgage title by deed unless he assigned the debt. It has been said that technically the fee in the mortgaged real estate is in the mortgagee. But even so, the mortgagee cannot convey the mortgage title unless he is in possession, or assigns the debt. Until foreclosure, or taking possession, the mortgage remains in the light of a chose in action, so far as the right to convey is concerned. The mortgage is but an incident attached to the debt, and cannot be detached from its principal. *Lunt* v. *Lunt,* supra; *Wyman* v. *Porter,* supra; *Jackson* v. *Willard,* 4 Johns., 41. It seems then that the rule which holds that a mortgagee in possession may convey the mortgage interest without assigning the debt is necessarily based upon the proposition that the mortgagee by taking possession acquires more than a mere mortgage right of security. He acquires a seisin in fact; he acquires a certain interest in the land itself,—a defeasible interest, indeed, but one which he can convey. It seems to be well settled that one merely in possession of lands may convey them by deed, the possession giving him for the purpose of conveyance a sufficient seisin. 3 Washburn Real Property, 132. Such a conveyance is good against all except those who have a better title. The application of the rule as to mortgagees is not limited to possession taken for purpose of foreclosure. We find no authority to that effect. It applies to possession taken under the mortgage for any lawful purpose.

Now in this case the proof is clear and undisputed that Fogg did take possession under his mortgage title in 1863. He was not merely in possession, but in possession with an interest. Undoubtedly, to enable him to convey an interest in 1873, without assigning the debt, the possession must have been continued. He did not work the quarry from 1864 to 1873. He worked elsewhere. In 1873, he came back, gave a deed of an undivided interest in the granite, and formed a partnership of which he was a member to work the quarry further. And the possession and work of the partnership was the possession and work of each member. Upon the undisputed facts, did the possession acquired by Fogg in 1863 continue until 1873? We think it should be so held. A seisin once acquired is presumed to continue

until it is shown that there has been an ouster or disseizin, or an abandonment. *Brown* v. *King*, 5 Metcalf, 173; *Currier* v. *Gale*, 9 All., 525; 3 Washburn Real Property, 130. No ouster or disseizin has been shown. Nor do we think that the mere fact that Fogg ceased working the quarry in 1864, and went to work elsewhere, is sufficient to warrant a finding that he had abandoned it. See *Adams* v. *Hodgkins*, 109 Maine, 361. His was not a mere possessory title which would cease when he ceased actually to occupy. It is not sought here to show a title by adverse possession, where the possession must not only have been continuous, but have been continuously manifested by acts of occupation. There is a distinction between non-use or non-occupancy, and non-possession. The owner of land may be in the legal possession of it, while not upon it. The owner of a lot of wild land, for illustration, retains the legal possession of the land, though he may not go upon it, nor operate upon it, for scores of years. Having taken possession of this granite, it was not necessary that Fogg should physically remain upon it, in order to continue his legal possession. He might perhaps abandon it, but we think he did not. Being of some value, the presumption is against it. His legal possession was an actual, as distinguished from a constructive possession. And as there is a presumption of the continuance of a title until the contrary is proved, *Porter* v. *Bullard*, 26 Maine, 448, so we think there is a presumption of the continuance of a condition upon which a title rests, namely, possession, or seisin, *Adams* v. *Hodgkins*, supra. The possession was such as would enable a mortgagee to convey a title.

We conclude then that Fogg in 1873 did have such possession of the granite as would enable him to convey his interest in it; and, therefore that the quitclaim deed from him to Smith and others was admissible, and that it showed a title in Smith and his co-grantees.

The defendant excepted to the admission of the warranty deed from John A. Fuller to James M. Smith dated September 16, 1889, and to the previous mesne conveyances by quitclaim deeds from Archelaus Smalley down to Fuller. These have been described already. These deeds cover all of the southeasterly end of the Smalley farm which is involved in this suit. The defendant contends that they include more, namely the six rod disputed strip, or practically that strip between the northerly line of the farm as claimed by the defendant and that line as claimed by the plaintiff. These deeds,

it will be remembered, described the tract conveyed as being 47 rods wide at one end and $46\frac{1}{2}$ rods at the other, somewhat wider than the farm as described in the original 1823 deed. The defendant's point, as we understand it, is that it was not competent for the plaintiff to show the boundaries of the farm, the granite in which was conveyed by an after conveyance by the grantor of the farm itself, and it contends that the admission of the deeds was prejudicial, because it was liable to lead the jury to think that the northerly boundary of the land conveyed to Smith was identical with the northerly line of the Smalley farm out of which the granite had been sold.

We may assume that these deeds were not admissible to show the northerly boundary of the Smalley farm, yet we think they were admissible to show the limits of land owned by James M. Smith. If the deed included no land outside of the Smalley farm, it was harmless, for the undisputed evidence elsewhere shows that Smith had a title, as already stated, to an undivided part of the granite on that farm. If the deed included land and granite outside the Smalley farm, and the defendant took the granite from the land, the plaintiff may recover for it in this suit. The defendant introduced evidence to show, and in argument contends, that Archelaus Smalley, at the time of his deed to John M. Fuller, owned land next northerly of the original Smalley farm. The southerly line of that land was not designated by monuments in the deed, nor is it shown by evidence in this case, but as stated, the land in the Fuller deeds was described as about 47 rods wide at one end and about $46\frac{1}{2}$ rods at the other. Though the distance named on the deed is not exact, yet, in the absence of monuments, it is not without significance. It may be that by fair construction, the deed conveyed some land northerly of the Smalley farm. But if it did, the result will be that Smith had not only an interest, as we have seen, in one undivided fifth of the granite on the Smalley farm, but also a warranty deed of the land without reservation of the granite northerly to the limits of his deed. Having that warranty deed, he had sufficient title and possession to enable him to maintain an action against a trespasser for all the granite in the land described in his deed, north of the Smalley farm, if any there was. In this suit his administrator seeks to recover only one-fifth. Accordingly the defendant was not prejudiced by the introduction of the deeds.

An exception was taken to the admission of testimony that James M. Smith at one time cultivated a piece of land within the limits of his deed for a garden. In view of the state of the title to the granite already found by us, this testimony was harmless.

An exception was taken to the admission of tax assessments for land and quarry, "land and quarry bounded on the north by Booth Brothers," made to James M. Smith, and the payment of the taxes assessed. The counsel for plaintiff in argument states that this testimony was offered as tending to show that Smith was in possession of the land and quarry. For this purpose the evidence was not admissible. The assessment of taxes, as bearing upon the title to property, is res inter alios, the act of third parties. The payment of taxes may be admissible as tending to show that the party paying claimed the property, as in cases of alleged adverse possession; or if the party is in occupation, as tending to show the character of the occupation. But it is not evidence of possession. *Carter* v. *Clark*, 92 Maine, 225. When the payment of taxes is admissible it is proper to show by the books what the property was which was assessed.

But in this case, the other evidence leaves no ground for controversy that Smith owned the land covered by his warranty deed, "bounded on the north by Booth Brothers," that he owned all the granite between the Smalley farm and Booth Brothers, if any, that he owned an interest in the granite or quarry on the farm, and that his administrator can maintain an action against a trespasser for the granite taken. The evidence objected to was therefore harmless.

The date of the writ was March 4, 1912. The quarry was operated from that time until September, 1913. A witness for the plaintiff testified to a computation of all the granite taken out of the quarry south of the line claimed by the plaintiff as far as "the bluff," which was the limit of excavation in September, 1913. This computation on the face of it included some granite taken after the date of the writ. After cross-examination in which the particular time when the witness made his measurements was developed, the defendant's counsel moved that the computation be stricken out. The motion was denied and an exception was taken.

We think the ruling was discretionary. The granting of a motion to stike out is usually discretionary. *Bridghams Applts.*, 82 Maine, 323. The question put to the witness in the first place indicated clearly the full limits of the granite computed by him, and was

answered without objection. The situation was this. The defendant, after it was sued in this action and after it was thus advised of the plaintiff's contention, continued to operate the quarry on the disputed area. The operation itself destroyed existing land marks, and made it impossible for the plaintiff afterwards to make an accurate computation. The necessary data for deduction were peculiarly within the knowledge of the defendant. To let the answer stand, does not appear, under the circumstances, to have been an undue exercise of discretion.

The surveyor appointed by the Court was called by the plaintiff as a witness. In a lengthy cross-examination, the defendant's counsel sought to discredit his testimony by showing bias and partiality. The defendant then introduced a witness who accompanied the court surveyor when he made his survey. The witness testified that he had asked the court surveyor to locate certain lots on the plan, and that he refused to do so. He was then asked if he gave as a reason that he had spent all the time that he was going to on the plan. The answer was excluded. The court surveyor had been inquired of about this conversation on cross-examination. This evidence was collateral. Its purpose was solely to impeach. How far and how long it should be continued lay within the discretion of the presiding Justice. *State* v. *Benner*, 64 Maine, 267; *Grant* v. *Libby*, 71 Maine, 427; *Mayhew* v. *Sullivan Mining Co.*, 76 Maine, 100.

An experienced land surveyor called by the defendant as a witness was allowed to testify on cross-examination that it is "found to be the ordinary thing that land overruns the measures given in the old deeds and old surveys." To the admission of this evidence, an exception was taken. That evidence of this character is not admissible for the purpose of lengthening an otherwise certain and definite measurement in an old deed is settled in *Heaton* v. *Hodges*, 14 Maine, 66, and cases cited therein. In that case the monument was lost. There was a definite measurement in the old deed. It was held that that measurement could not be enlarged by proof that old measurements in deeds and old surveys were ordinarily shorter than the real lines. *Prop'rs of Kennebec Purchase* v. *Tiffany*, 1 Maine, 219. But we think such evidence is admissible to explain apparent discrepancies between old surveys and measurements and what are claimed to be the monu-

ments marking true lines and corners. And this is especially true in cross-examination. Such is the frequent practice. And we have found no authority to the contrary.

We have examined all the other exceptions taken, but find nothing which requires discussion. No reversible error appearing, the exceptions must all be overruled.

We have already considered so much of the motion for a new trial as relates to delivery or non-delivery of the deed from the plaintiff's intestate to his wife. As to all other questions of fact arising under the motion, it is necessary only to say that there was sufficient evidence to warrant the verdict of the jury.

*Motions and exceptions overruled.*