LARRY JOHN HARRISON PRO AMI
*vs.*
STANLEY WELLS

Somerset.   Opinion, June 21, 1955.

*Ames & Ames,* for plaintiff.

*Perkins, Weeks & Hutchins,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ.   MR. JUSTICE TIRRELL sat at the time of argument and took part in conferences but died before writing of opinion.

FELLOWS, C. J.   This case for alleged negligence causing injury to a three year old child comes to the Law Court on motion for new trial, based on claim of newly discovered evidence. The action was tried at the May 1954 term of the Superior Court for Somerset County, before a jury, which resulted in a directed verdict for the defendant. Exceptions

were taken, but not completed as required by the docket entry, and judgment was ordered for the defendant by the presiding justice at the September term, 1954. During the September term, 1954, and before judgment, the plaintiff filed this motion for new trial on grounds of alleged evidence newly discovered.

The plaintiff's declaration alleged that while delivering fuel oil at a dwelling house from a tank truck, the defendant "in turning said truck around for the purpose of leaving said driveway, after delivering said oil, then and there so carelessly and negligently managed and drove said truck that while backing or otherwise driving said truck for the purpose aforesaid of leaving said driveway, said truck violently hit or struck the plaintiff." The declaration further alleged due care on the part of the infant plaintiff Larry John Harrison, due care on the part of Theresa Harrison the mother of the plaintiff, and due care on the part of Mrs. Stanley Costello the plaintiff's grandmother.

No witness was presented at the trial who saw the car when it struck the plaintiff (if it did strike the plaintiff). No witness saw the child until the truck was gone, and the child was found lying in the road cut and bruised, but with no broken bones.

The record shows that the testimony offered by the plaintiff at the trial tends to prove that the infant plaintiff, then three years old, was in the care of his maternal grandmother, Anna Costello, with two other small children aged five and four, while the parents were away at work. Mrs. Costello lived in a house near to the Harrison house. Stanley Costello the grandfather ordered oil to be delivered, and then left for a walk. Mrs. Costello went from the Harrison house to her own house, stopping at a hen house for eggs. Two children ran ahead and the third (a girl) stayed with her. One boy ran back to her, and she then saw the three

year old plaintiff, Larry John Harrison, lying on the ground. She picked the child up and ran with him to the home of Dorothy Grendle who was a near neighbor, and who telephoned for the police, and for a car to take the child to a hospital. At this time the grandmother first saw a truck on the highway which she assumed had been in her driveway.

The only witness who placed the truck in the Costello driveway was Frederick H. Gould, Chief of Police, Fairfield, Maine. Gould received the phone call about 11 A.M., from the neighbor and took the child to the hospital. He later interviewed Stanley Wells, the defendant. The testimony was principally the police blotter which the Chief of Police read as follows: "I have two items in regards to this injury to this boy on the police blotter on December 11th, 1952. The first item is regarding receiving the call and responding to the call and taking the child to the hospital, but the latter part of that first item might apply to my conversation with Stanley Wells. It reads: Chief on return from hospital checked and found that an oil truck owned by Omar Champine, the proprietor of the Esso Service Sta. on Main Street, Fairfield, had made a delivery of oil at the Costello place that morning. The driver had no knowledge of striking the child. Driver was Stanley Wells. That was in the forenoon. At 2:30 P.M. to 3 P.M. inclusive Chief interviewing driver of truck that possibly struck John Harrison. Also boy's parents and other reports. Child was in hospital in an oxygen tent under care of Doctor Greenlaw. Driver of truck said that he noticed three children on lawn of Costello place when he entered driveway to make a delivery. He said that he delivered his oil stopping his truck in the driveway in front of the house. He said that before he started to drive off that he cautioned children to watch out for the truck, and that when he last observed them that they were running away from the truck in between the buildings. He then said that he drove ahead in the

driveway and then had to back up in order to head truck toward road. After backing up he drove off out of the driveway and did not strike anything to his knowledge. The child was found by Mrs. Annah Costello, the boy's grandmother."

At the close of the evidence, defendant's counsel moved for a directed verdict which was ordered, and properly. There was no evidence to show that the truck struck the plaintiff or that there was any negligence on the part of the defendant. It was only conjecture and supposition.

After the plaintiff's counsel filed this motion for a new trial, on the ground of newly discovered evidence, a hearing was held on December 20, 1954 before a Justice of the Superior Court and one witness, only, was called. The witness to show this alleged new evidence was Dorothy Grendle, who was the person who had telephoned for the police on the day the child was injured December 11, 1952. Mrs. Grendle, who lived approximately 150 feet from the Harrison and Costello homes, testified that the injured plaintiff was brought to her house by Mrs. Costello. Before the child was brought to her house she had been doing housework in the bedroom, and casually saw an oil truck in the Costello yard. There was no name on the truck, but she had seen the same truck on previous occasions. She saw the Harrison children playing in the yard while the truck was there. She saw the driver of the truck but was not acquainted with him and did not know his name. She only saw him standing with the hose in his hand. She did not see the truck leave the yard. A short time afterwards Mrs. Grendle met the grandmother at her door with the injured child and telephoned. Mrs. Grendle is friendly with the Costellos and Harrisons and talked with them several times. In fact, she called Mrs. Harrison to tell her that her infant son had been hurt, and that he was being taken to the hospital and for her to go there. Mrs. Grendle talked with the attorney for the plain-

tiff one day prior to the trial, when he came to her house to see how the houses were located.  She testified as follows:

"Q.  That morning that Larry John was brought to your house injured had you seen the Harrison children playing out there in the dooryard that morning?
A.  Yes, they were.

Q.  Whether or not you had seen them around in the dooryard about the same time that the oil truck was there?
A.  Yes, I noticed them.

Q.  Where did you notice them?  Where were they?
A.  They were playing around.  There is a little garage just off the barn a little.  The garage sits just off, and it is a house now, but it has been a garage before, and they were playing around in front of the barn and in front of the little garage there.

Q.  Do you know whether or not Mr. and Mrs. Harrison were at home that day?
A.  No, they were both at work.

Q.  Do you know whether or not Mrs. Costello was at home that morning?
A.  Yes, she was keeping the children.

Q.  Did I understand you to say that you didn't see the truck as it left the yard?
A.  I didn't.

Q.  And you don't know on this particular morning whether it had to back up or not in order to turn, of your own knowledge?
A.  No, I don't.

Q.  Did you say you didn't see the machine leave the yard?
A.  No, I didn't."

Mrs. Grendle also testified:

"A.  I called Mrs. Harrison from Costellos at Hathaways where she worked to tell her Johnnie

had been hurt and they were taking him to the hospital, and for her to go there.

Q. That was on December 11th, 1952?
A. Yes.

Q. So that you did talk with her directly by telephone immediately after the accident?
A. Yes, I informed her of the accident.

Q. She knew that you had had some part in this transaction, this episode?
A. Yes.

Q. Now, did you ever talk with the attorneys or the Attorney Mr. Ames in regard to this accident?
A. Mr. Ames came down to my house one afternoon to see how the houses were situated. Other than that I hadn't.

Q. But you did talk with him at that time?
A. Yes, I did.

Q. And that was prior to this last hearing when he was looking the situation over?
A. Yes.

Q. So you did talk to Mr. Ames prior to that hearing?
A. Yes.

Q. Do you recall at that time whether you mentioned the fact that Mrs. Costello and the child had been over to your house?
A. Yes, I think I did mention it.

Q. You mentioned that to Mr. Ames?
A. I think so.

Q. And do you recall whether you stated you had gone to Costellos house?
A. I don't remember.

Q. You may or may not have?
A. I may have.

Q. Do you recall whether you mentioned anything regarding an oil truck in the yard?
A. Yes, I am quite sure I mentioned it."

The present motion for new trial on the ground that this evidence of Dorothy Grendle was newly discovered raises the questions of whether this claimed new evidence is such that it would probably change the result if a new trial was granted, and whether this evidence should have been discovered before the trial.

The law and rules of practice relating to a new trial for alleged newly discovered evidence are well established. Five things must appear (1) that the new evidence is such that it will probably change the result upon a new trial, (2) that it has been discovered since the trial, (3) that it could not have been discovered before the trial by the exercise of due diligence, (4) that it is material to the issue and (5) that it is not merely cumulative or impeaching. Applications for new trials on the ground of newly discovered evidence are not favored by the courts. Proof must be convincing. *London* v. *Smart*, 127 Me. 377; *State* v. *Casale*, 148 Me. 312; *Linscott* v. *Insurance Co.*, 88 Me. 497; *State* v. *Stain et al.*, 82 Me. 472; *Smith* v. *Booth Brothers*, 112 Me. 297; *Parsons* v. *Railway*, 96 Me. 503. It was early held in Maine, and consistently followed, that where there is a motion for new trial on ground of newly discovered evidence there "must be an end to litigation" and "the evidence must be very strong." *Snowman* v. *Wardwell*, 32 Me. 275.

The rules of court 16 and 17 printed in 147 Me. 470 state procedure and may require an affidavit to the motion. See also Revised Statutes, 1954, Chapter 106, Sec. 15, relative to criminal cases.

The plaintiff in his brief cites many cases which hold in effect that a child is bound to exercise only that degree of care which prudent children of his age are accustomed to use, and cases holding that a motor vehicle operator must see what he should see, in the exercise of reasonable care. All of which cases give well known rules that require no citation of authorities. There was no evidence, however, to

show what the child was doing when he was struck by the truck, if in fact he came in contact with the truck, and nothing to show the actions of the operator, from which a jury could decide whether there was care or negligence. If the child was hit, cut and bruised by the truck, and not by some other means while at play, he might have run into the side of the truck, as in *Greene, Admr.* v. *Willey,* 147 Me. 227.

The three all important questions asked in every negligence action—how, when, where—are not answered. The new witness does not answer. No witness (including the new witness Dorothy Grendle) saw the truck strike the plaintiff, if in fact it did strike the plaintiff. If the truck did strike the plaintiff, did it run into, or did it back into, the plaintiff? If it struck the plaintiff, did the plaintiff, at play, suddenly and without warning run into the path of the moving vehicle? All these are conjecture. There is no proof. The testimony of Mrs. Grendle adds nothing more to the nothing that was known. If her testimony be added to the testimony taken at the trial, the result would necessarily be the same, and a verdict would, on motion, have to be directed for the defendant. There is no evidence of either negligence on the part of the defendant or care on the part of the plaintiff. See *Bernstein* v. *Carmichael,* 146 Me. 446.

There is no need to consider whether due diligence was used to discover the evidence of Mrs. Grendle, or whether the rule of court was complied with, or any other necessary requirement. The motion must be denied, because the evidence of Mrs. Grendle that was presented would not change the result at another trial.

*Motion for new trial denied.*