STATE of Maine

v.

William TERRONI.

Supreme Judicial Court of Maine.

Oct. 21, 1970.

Nicholas S. Strater, Asst. Atty. Gen., Augusta, for plaintiff.

Franklin F. Stearns, Jr., Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

MARDEN, Justice.

On appeal from conviction for illegal bookmaking. After verdict, respondent

filed motions for (a) judgment of acquittal, (b) for arrest of judgment, and (c) for a new trial. These motions were denied and appeal entered.

Pending appeal, a motion for a new trial on the ground of newly discovered evidence was filed, hearing was held thereon and the motion was denied. Appeal was taken. These appeals are prosecuted together but the point upon denial of a judgment of acquittal is not pressed. The issues before us are:

(a) Whether there was error in the denial of the motion in arrest of judgment.

(b) Whether there was error in denying the motion for a new trial, and

(c) Whether there was error in denying the motion for a new trial on the grounds of newly discovered evidence.

### Arrest of Judgment

The motion for arrest of judgment was grounded upon an alleged insufficiency of the indictment, which read as follows:

"Count I: THE GRAND JURY CHARGES: that William Terroni, of Portland, County of Cumberland, State of Maine, did on May 1, 1967 and continuously thereafter up to and including October 18, 1967, at Portland, County of Cumberland, State of Maine, engage in bookmaking unauthorized by law, to wit: did make, accept and otherwise participate in illegal wagering on horseraces unauthorized by law in violation of Title 17 M.R.S.A. Section 1801."

The attack on the sufficiency of the indictment is two-fold,—(1) that it charges no offense under the Maine statutes, and (2) that the indictment offers the accused no protection from double jeopardy.

The first criticism is directed to the syntax of the charging instrument. It is argued that the adjective "unauthorized as used in the specification must be read as applying to "horseraces" rather than "wagering" and urged (a) that there is no such thing as an "unauthorized" horse race, and (b), if so, there is no prohibition against betting on the outcome of such unauthorized race. Assuming that the reference adjective must be read as modifying "horseraces," with which we do not agree, the statutes provide the response.

■ 17 M.R.S.A. § 1801 proscribes bookmaking (the taking and recording of bets on horse races, Words and Phrases) "unless authorized by law." The only "bookmaking" on horse races which is authorized by law is that "within the enclosure of any race track where is held a race * * * licensed and conducted" by the State Racing Commissions,[1] and under Racing Commission regulations "but not elsewhere." Any other bookmaking on a horse race, whether the race is authorized (licensed) or unauthorized (unlicensed) is illegal, and the indictment so charged, regardless of its syntax. It was not necessary to plead "the matters to be given in evidence," State v. Hume, 146 Me. 129, 138, 78 A.2d 496, 502, State v. Charette, 159 Me. 124, 127, 188 A.2d 898, and if the accused desired information whether the alleged bookmaking occurred in fact off the track on an authorized race or at some place on an unauthorized race, a motion for further particulars was available to him under Rule 7 M.R.Crim.Proc. This particularity was immaterial for the respondent denied making any bet.

■ As to the protection from double jeopardy to which he is entitled, the law is stated that "(w)hen an offense charged consists of a series of acts extending over a period of time, a conviction or acquittal for a crime based on a portion of that period will bar a prosecution covering the whole period," Wharton's Criminal Law & Procedure by Anderson § 145, p. 351, which principle was declared in State v. Brown-

---

1. 8 M.R.S.A. § 261 et seq. for Harness racing.

8 M.R.S.A. § 321 et seq. for Running Horse racing.

rigg, 87 Me. 500, 502, 33 A. 11, and followed in State v. Peloquin, 106 Me. 358, 362, 76 A. 888.

The indictment meets both the requirements of information and protection from double jeopardy fixed by *Charette, supra,* and there was no error in the denial of the motion in arrest of judgment.

### New Trial, on Motion

The motion for a new trial addressed to the presiding Justice was founded upon alleged errors by the Court in several categories but only one category is briefed,— that having to do with the exclusion of testimony which appellant sought by three questions in cross-examination of prosecuting witnesses.

For the exclusion of testimony to be a ground for relief, the proffered testimony must be material and its exclusion prejudicial, as to both of which elements appellant has the burden.

"It is not enough to show that a technically admissible question was excluded, but he (exceptant, appellant) must go farther and show affirmatively that he was prejudiced by such exclusion. It must appear * * * in the record that the answer would have been in the respondent's favor, otherwise no harm could have been done." State v. Dow, 122 Me. 448, 449, 120 A. 427, 428.

■ No purpose is served in detailed discussion of the State's evidence which was the basis for the excluded questions. In no instance does it appear by offer of proof that the answers anticipated would have been favorable to the appellant, and the exclusion therefore prejudicial. See Rodrigue et al. v. Letendre et al., 158 Me. 375, 377, 184 A.2d 777. The first question included a false premise and both the first and second questions were subsequently asked in substantially the same terms and without objection were answered. The third question was premised upon the contention that the testimony of the two "under-cover" officers was inconsistent upon a circumstantial fact, which alleged inconsistency is not supported by the record. The denial of the motion was not error.

### New Trial, on Newly Discovered Evidence

A slip of paper (State's Exhibit # 1) allegedly bearing the notations which recorded the illegal bet bore the name "Smiley" as identification of the bettor. No one was identified as "Smiley" at trial. Appellant denied placing a bet on the day in question, writing upon any pad of paper or a slip or that he was known as "Smiley."

In cross-examination, Officer "A" was asked if he knew or had ever heard of one by the name of "Smiley" Russell. The answer was negative. Later, if he had ever heard the name "Smiley" Russell or Rexton B. Russell, Jr., and the officer replied that he had heard the name Rex Russell, that he had seen the name Rex Russell on pieces of paper, but that he did not know "Smiley" Russell and Rexton B. Russell as the same person.

Officer "B" testified that in the "slips" seized covering dates in June, July and August, the name "Smiley" appeared a number of times. The officer testified that because of his observations on October 18th he concluded that the appellant was "Smiley." This officer also had observed the name of Rex Russell during his investigation, but that he never ascertained that "Smiley" and Rex Russell were one and the same. This was the status of the record relative "Smiley" at trial. (February 12, 1968).

Subsequently the motion for a new trial on the ground of newly discovered evidence was filed July 10, 1968 and heard December 5, 1969. Upon this occasion one R—— was presented, who testified that he frequented the Bar at which the bet was recorded, did place a bet on October 18th, that he paid $2.00 to the proprietor but that the proprietor did the writing, that he is "Smiley," that he knows the appellant, that the appellant was not in the Bar, October 18th while

he, R——, was there, that he, R——, was arrested in the Bar shortly after he placed the bet, and that he was prosecuted in the District Court, appealed and "never heard any more since."

M——, the proprietor of the Bar, testified that he knew "Smiley" R——, whose real name was James R——, that "Smiley" was in the Bar on the day of the raid, and placed a bet, which he, M——, recorded on the slip identified at trial as State's Exhibit # 1.

M—— testified that he was arrested on that date and "since convicted of this so-called bookmaking."

Appellant urges that because both R—— and M—— were under prosecution at the same time as he was, they could not be expected or required to testify on his behalf, and represents that the identity of "Smiley" was not determined until after his (appellant's) trial.

■ In the interests of finality, motions based upon newly discovered evidence "are not favored by the Courts. Proof must be convincing. * * *." Harrison, Pro Ami v. Wells, 151 Me. 75, 81, 116 A.2d 134, 137.

The tests to be applied to this motion were last recited in a criminal case in State v. Casale, 148 Me. 312, 319, 92 A.2d 718; Id., 150 Me. 310, 311, 110 A.2d 588 and need not be repeated.

■ The conclusion is irresistible that appellant and the man who later identifies himself as "Smiley" R—— and M—— were arrested at the Bar on October 18, 1967. The indictment against appellant was found and filed on January 23, 1968. There was no indictment returned against R——. Appellant's case came to jury trial on February 12, 1968. Due diligence during that interim would have disclosed that R—— was known as "Smiley." True, that until the prosecution of R—— was terminated, he could not be compelled to testify for appellant, but R—— was not under indictment at time of appellant's trial and representa-

tions to the trial Court as to the unavailability of M—— would have been appropriately a basis for requesting a continuance, as was done in Atkins v. Field, 89 Me. 281, 289, 36 A. 375. See also *Rodrigue, supra,* 158 Me. at p. 378, 184 A.2d 777. It cannot be contended successfully that either R—— or M—— was "newly discovered" within the rule.

What of the required probability that a different result would be reached upon a new trial? The meaning of "probability" as used in the rule was fixed in State v. Stain, et al., 82 Me. 472, 490-491, 20 A. 72, 77, where it was said:

"If, with the newly-discovered evidence before them, the jury ought not to come to the same conclusion, then a new trial may be granted; otherwise they are bound to refuse the application. * * * The question, therefore, is (supposing all the testimony, new and old, before another jury) not whether they might, but whether they ought to give another verdict."

State v. Irons, 137 Me. 294, 299, 18 A.2d 798, 801, states:

"It is not sufficient that there may be a possibility or chance of a different result, or that a jury might be induced to give a different verdict; there must be a probability that the verdict would be different upon a new trial."

"(U)pon these considerations the question before the appellate court is, was the action of the Justice below * * * clearly wrong." State v. Dodge, 124 Me. 243, 250, 127 A. 899, 903.

■ In connection with the slip of paper (State's Exhibit # 1) which was offered in proof of the illegal wager and which, the State claimed, was in the handwriting of the appellant, the appellant at trial submitted samples of his handwriting. The jury had the slip and the handwriting specimens before it. These exhibits which were before the jury and the trial Judge

who considered the motion based upon alleged newly discovered evidence, were not made a part of the record. It cannot be said that the denial of a new trial by the Justice below was clearly wrong.

Appeal denied.