Salvador CHIAPETTA

v.

**LUMBERMENS MUTUAL
INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued Sept. 7, 1990.
Decided Nov. 29, 1990.

John S. Campbell (orally), Robert Axelrod, Poulos, Campbell & Zendzian, Portland, for plaintiff.

David C. King (orally), Rudman & Winchell, Bangor, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

Salvador Chiapetta appeals from a judgment in favor of the defendant Lumbermens Mutual Insurance Company (Lumbermens) entered in the Superior Court (Cumberland County, *Brennan, J.*) following a jury trial and the denial of his motions for a new trial. Chiapetta contends, *inter alia,* that he is entitled to a new trial because the jury verdict against him is contrary to the weight of the evidence, and that new evidence has become available that would result in a different outcome at a new trial. Chiapetta also seeks review of pretrial orders dismissing and granting summary judgment on three counts in his complaint. We find no error and affirm the judgment.

Chiapetta owned a clam depuration plant in Scarborough. Lumbermens, through Clark Associates, its authorized agent, issued a fire insurance policy to Chiapetta covering the clam plant. The policy contained provisions denying coverage on the building if it remained "vacant or unoccupied beyond a period of sixty (60) consecutive days" or if the hazard of fire was increased by "any means within the control or knowledge of the insured."

In March 1979, Chiapetta, who had operated the plant for several years, leased it to Robert Bayley and moved to Louisiana. Bayley continued to operate the plant until late July 1979, when the Department of Marine Resources revoked his permit to depurate clams. Bayley vacated the premises in August 1979. During September, Chiapetta returned to Scarborough for one week to clean the premises and to shut the plant down. He then returned to Louisiana

leaving the premises unattended. On November 6, 1979 a fire broke out destroying the clam plant and its contents. Chiapetta was indicted by a grand jury on a charge of soliciting Bayley to commit arson in connection with the fire. The criminal case against Chiapetta was dismissed in April 1981 because the state was unprepared to go forward with the prosecution. Lumbermens denied Chiapetta's claim for payment under the insurance policy citing the vacancy and increased hazard provisions.

Chiapetta's initial complaint sought recovery under the insurance policy on a breach of contract theory, interest and attorney fees under the late payment statute, 24–A M.R.S.A. § 2436 (1990), and consequential damages. Chiapetta later amended his complaint to add one count alleging breach of the implied duty of good faith and fair dealing, two counts alleging intentional infliction of emotional distress and one count alleging malicious prosecution as a result of his indictment for arson.

Lumbermens moved for dismissal or summary judgment on all counts. The Superior Court granted a summary judgment in favor of Lumbermens with respect to the count seeking interest and attorney fees under the late payment statute and dismissed the counts alleging intentional infliction of emotional distress. Chiapetta's claims for breach of contract, breach of the covenant of good faith and fair dealing and malicious prosecution were tried before a jury.

At the conclusion of an eight-day trial, the jury returned a special verdict against Chiapetta finding no breach of the insurance contract and no malicious prosecution. The Superior Court entered judgment for Lumbermens. Chiapetta then moved for a new trial on the breach of contract and breach of covenant claims. Later, Chiapetta filed a supplemental motion for a new trial requesting retrial of all issues based on the availability as a witness of Robert Bayley who was previously unavailable to testify at trial due to a medical condition. The Superior Court denied both motions and Chiapetta appealed.

### Claim Under 24–A M.R.S.A. § 2436

Chiapetta contends that summary judgment should not have been entered against him on Count II of his complaint brought pursuant to 24–A M.R.S.A. § 2436 because Lumbermens did not dispute Chiapetta's claim within a thirty-day period.[1] That section requires an insurer either to dispute a claim or to pay it within thirty days after receipt of an insured's proof of loss. It further provides, however, that the insurer may, within thirty days of the proof of loss, request that "reasonable additional information" be provided by the insured, and that in such a case, the undisputed claim is not overdue until thirty days after the additional information is received.

The record clearly reflects that sixteen days following the submission of Chiapetta's proof of claim, Lumbermens requested "reasonable additional information" in the form of Chiapetta submitting to an examination under oath. Lumbermens disputed the claim within thirty days of that examination, complying with both the letter and the spirit of the requirements of section 2436. Summary judgment was properly granted on Count II.

### Intentional Infliction of Emotional Distress

Chiapetta's complaint included two counts alleging intentional infliction of emotional distress. The basis of these claims was Lumbermens' assertion of the policy defenses of nonoccupancy and in-

---

1. 24–A M.R.S.A. § 2436 (1990) provides in pertinent part:

     A claim for payment of benefits under a policy of insurance against loss delivered or issued for delivery within this State is payable within 30 days after proof of loss is received by the insurer and ascertainment of the loss is made either by written agreement between the insurer and the insured or by filing with the insured of an award by arbitrators as provided for in the policy, and a claim which is neither disputed nor paid within 30 days is overdue, provided that if during the 30 days the insurer, in writing, notifies the insured that reasonable additional information is required, the undisputed claim shall not be overdue until 30 days following receipt by the insurer of the additional required information. . . .

creasing the risk, and its refusal to pay the fire loss. Chiapetta argues that the court erred in dismissing those counts prior to trial.

After an eight-day jury trial, the jury found in favor of Lumbermens on the essential issues of breach of the fire insurance contract and malicious prosecution. The evidence at trial demonstrated that the conduct of Lumbermens was not "so 'extreme and outrageous' as to exceed 'all possible bounds of decency'" nor could it be "regarded as 'atrocious and utterly intolerable in a civilized community.'" *Vicnire v. Ford Motor Co.*, 401 A.2d 148, 154 (Me.1979) (quoting *Restatement (Second) of Torts*, § 46 (1965)). Moreover, Lumbermens assertions of its policy defenses in a legally permissible way does not render it liable for emotional distress. *Restatement (Second) of Torts*, § 46 comment g. Assuming without deciding that the Superior Court's dismissal of the intentional infliction of emotional distress claims was premature,[2] the error, if any, was harmless.

### Motion for New Trial

Chiapetta next contends that the Superior Court erred in denying his motion for a new trial. He contends that the jury's verdict for Lumbermens on the breach of contract and breach of covenant of good faith claims[3] was against the weight of the evidence because Lumbermens' defenses of nonoccupancy and increased risk were insufficient and not supported by the evidence.[4]

■ Upon a motion for a new trial, the movant must show that the jury verdict was "so manifestly or clearly wrong that it is apparent that the conclusion of the jury was the result of prejudice, bias, passion, or a mistake of fact." *Daniel v. Ouellette*, 560 A.2d 566, 567 (Me.1989) (citing *Binette v. Deane*, 391 A.2d 811, 813 (Me.1978)). The evidence must be viewed in the light most favorable to the successful party and the jury's verdict must stand unless there is no credible evidence to support it. *Id.* The trial justice's determination that a new trial is not warranted will not be disturbed unless a clear and manifest abuse of discretion can be shown. *Binette*, 391 A.2d at 813.

The jury's finding that Lumbermens did not breach its contract of insurance with Chiapetta could have been based on either the nonoccupancy defense or the increased risk defense asserted by Lumbermens. With respect to the nonoccupancy defense, Chiapetta presented evidence that despite the nonoccupancy provision, he was provided with coverage for nonoccupation or nonoperation of the plant that was "usual and incidental" to the depuration business, a seasonal operation. The jury was instructed, without objection, that the nonoccupancy clause would not bar Chiapetta's recovery under the policy if the nonoccupancy was "usual or incidental" to the business. Chiapetta further testified that he always closed the plant during the winter months and, based on this testimony, the jury could have found the nonoccupancy of the building in November to be "usual or incidental" to the business. That finding, however, was not the only conclusion open to the jury.

■ The evidence at trial established that the peak season for processing clams was between May and the end of September, but Chiapetta had sometimes operated the business well into October and, on one occasion, into November or December. There was also evidence that Chiapetta was finished with the clam processing business and would not return to it. He had leased the building to Robert Bayley through the end of December 1979, and the lease agreement contained an option to buy. The immediate cause of the closing of the plant in

---

**2.** Lumbermens moved to dismiss or for a summary judgment. The court treated the motion as a motion to dismiss and dismissed those claims. *See* M.R.Civ.P. 12(c).

**3.** The jury was instructed on Chiapetta's claim for breach of covenant of good faith and fair dealing. The interrogatory answered by the jury, however, asked only if Lumbermens breached its insurance contract with Chiapetta. The jury found there was no breach.

**4.** Chiapetta has not argued that the verdict in favor of Lumbermens on Chiapetta's claim of malicious prosecution is against the weight of the evidence admitted at trial.

late July or early August was the loss of Bayley's permit to operate the plant, and not the end of the clam processing season. The building was not occupied from August through November 6, 1979, the date of the fire. Chiapetta did spend a few days at the plant in September 1979, but only to clean up and close a nonoperational business. Such activity does not as a matter of law constitute occupancy in the usual course of business, and does not serve to suspend or interrupt the period of nonoccupancy that began in late July or early August. *Cf. Hanscom v. Home Ins. Co.,* 90 Me. 333, 338, 38 A. 324 (1897) (occupancy requirement not satisfied by frequent inspection visits and oversight of seasonal residential building since its customary use was family home). Viewing the evidence in a light most favorable to Lumbermens, the jury could have found that the nonoccupancy in November 1979 was not usual or incidental to the business and that Chiapetta was barred from recovering under the nonoccupancy provision of the fire policy.

■ It was also a bar to recovery under the Lumbermens' policy if the hazard of fire was increased by "any means within the control or knowledge of the insured." There was evidence that Chiapetta wanted to get out of the clam processing business and that he had no intention of continuing the business. There was further evidence that Chiapetta had offered Robert Bayley a year's free rent in another of Chiapetta's buildings if Bayley would burn down the clam processing ·plant. Arson was the cause of the fire in Chiapetta's building. Based upon that evidence, the jury could have found that because of the increased risk provision, Lumbermens was justified in denying coverage to Chiapetta.

■ Chiapetta also contends that he is entitled to a new trial because Lumbermens breached the insurance contract as a matter of law by failing to pay the mortgagee bank under the mortgage clause of the policy. *See* 24–A M.R.S.A. § 3002. The court did not instruct the jury as to the mortgage clause and Lumbermens' obligation under it. Chiapetta did not object to the instructions given by the court and has not preserved the issue for appeal. *Thurston v. 3K Kamper Ko., Inc.,* 482 A.2d 837, 841 (Me.1984); M.R.Civ.P. 51(b). We have examined the record for manifest error and find none.

■ In addition, Chiapetta contends that the evidence overwhelmingly supports his claim against Lumbermens for breach of a covenant of good faith and fair dealing. After being properly instructed, the jury found that Lumbermens committed no breach of the insurance contract. Chiapetta had the burden of proof on the breach of the covenant of good faith and fair dealing, and, on this record, the jury was not compelled to find that Lumbermens acted in bad faith or unfairly. *Luce Co. v. Hoefler,* 464 A.2d 213, 215 (Me.1983).

Supplemental Motion for New Trial

Chiapetta further contends that the court erred in denying his supplemental motion for a new trial. That motion was based on Chiapetta's assertion that Robert Bayley was unavailable to testify at the trial, and that he would be available at a new trial. An affidavit submitted at the hearing on the supplemental motion for a new trial asserts that Bayley's trial testimony would be that he "honestly do[es] not recall" Chiapetta making a remark to him about free rent if the clam plant were burned down, and that his previous statements that such an offer was made to him (concerning which there *was* testimony at the first trial) were the result of his being intimidated by police officers during the investigation of the fire.

■ In order to succeed on a motion for a new trial based on newly discovered evidence, the movant must establish

"(1) that the new evidence is such that it will probably change the result upon a new trial, (2) that it has been discovered since the trial, (3) that it could not have been discovered before the trial by the exercise of due diligence, (4) that it is material to the issue, and (5) that is not merely cumulative or impeaching."

*Town of Eliot v. Burton,* 392 A.2d 56, 58 (Me.1978) (quoting *Harrison v. Wells,* 151

Me. 75, 116 A.2d 134 (1955)). New trials based on newly discovered evidence are disfavored and granted only upon convincing proof. *Id.* We review the denial of a motion for a new trial for abuse of discretion. *See* Field, McKusick & Wroth, *Maine Civil Practice* § 59.2 at 368 (Supp.1981).

▆▆▆▆ Although both parties stipulated that because of medical reasons, Bayley was unavailable to testify at the first trial, he was a person well known to the parties all during the litigation. His deposition had been taken but was not used at the first trial. Chiapetta has failed to demonstrate convincingly that the Bayley testimony was evidence newly discovered. Moreover, the purpose of Bayley's testimony would be to impeach his own statements and the testimony of several witnesses who testified that Bayley did say that Chiapetta would give him a year's free rent if the clam plant were burned. Impeaching evidence is an insufficient basis on which to grant a new trial. *Town of Eliot,* 392 A.2d at 58. The testimony of Bayley does not compel a finding by the trial justice that the result of the trial would probably be changed upon its use at a new trial. The court acted well within its discretion in denying Chiapetta's supplemental motion for a new trial.

We have examined the additional contentions of Chiapetta and find them to be without merit.

The entry is: Judgment affirmed.

All concurring.