**Wayne and Alice MARQUIS**

v.

**FARM FAMILY MUTUAL INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued June 15, 1993.
Decided July 13, 1993.

Daniel G. Lilley (orally), John A. McArdle, III, Portland, for plaintiff.

Paul S. Douglass (orally), Platz & Thompson, P.A., Lewiston, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Wayne and Alice Marquis appeal from a judgment entered in the Superior Court (Aroostook County, *Pierson, J.*), on their action for the breach of two fire insurance contracts by Farm Family Mutual Insurance Company. The plaintiffs contend that the court erred: (1) in concluding the evidence of lost profits presented at trial was too speculative, leading it to reduce the jury award; (2) in denying its claims for interest and attorney fees under §§ 2436 and 2436–A of Title 24–A M.R.S.A.; and (3) in denying their claims based on bad faith on the part of Farm Family. Farm Family cross-appeals, contending that Wayne Marquis's refusal to submit to an examination under oath and submission of a fraudulent claim relieved it of any obligation under the policies. We reject the challenges by Farm Family and reinstate the jury verdict in its entirety.

### Factual Background

The Marquis operated a potato farm in Van Buren. On April 15, 1987, a fire destroyed a potato house in which they had stored their potato crop, farm machinery, and farm supplies.[1] Two separate policies issued by Farm Family insured the farming operation: (i) the potato crop was insured under one policy with a limit of $30,000; and (ii) the farm machinery and farm supplies were insured under a second policy with a limit of $45,000 for the machinery, and $2,000 for the supplies.

Wayne promptly notified Farm Family of his loss, and the insurer assigned Susan McBride to adjust the fire loss. McBride first arrived at the scene on the day after the fire, and obtained a recorded statement from Wayne. Her investigation led her to conclude that the fire was suspicious based in part on the following factors: Wayne's severe financial problems, and the Farmer's Home Administration's denial of his request for an operating loan; the poor condition of the potato crop prior to the fire; the discrepancy between her estimate of the quantity of potatoes lost in the fire (2,000 barrels) and Wayne's estimate (4,000–4,500 barrels); the findings of a retired state fire marshal that the cause of the fire was incendiary; and the findings of a federal potato inspector that 75% of the potatoes were rotten one week after the fire.

As a result of the McBride investigation, Farm Family, by letter dated July 8, 1987, requested that Wayne submit to an examination under oath on August 20, 1987, and produce documents relating to his farming business and his claimed losses. Two days later, on July 10, 1987, Wayne was indicted on two counts of arson by the Aroostook County Grand Jury. 17–A M.R.S.A. § 802 (1983 & Supp.1992). Thereafter, Wayne notified Farm Family that he would not submit to an examination under oath until the completion of the criminal proceedings. Farm Family then rejected Wayne's claim in its entirety due to Wayne's failure to submit to the examination under oath.

At the criminal trial, Wayne's motion for a judgment of acquittal, based on insufficient evidence, was granted at the close of the State's case.

### Procedural History

The plaintiffs' amended complaint contained six counts: (I) breach of contract by Farm Family; (II) statutory interest and attorney fees, pursuant to the late payment

---

1. The potato house itself was neither owned nor insured by Wayne and Alice and its loss is not at issue on appeal.

of claims statute, 24–A M.R.S.A. § 2436, from Farm Family; (III) breach of fiduciary duty, and commission of the tort of bad-faith, by Farm Family and Susan McBride; (IV) Malicious Prosecution by Farm Family and Susan McBride; (V) malicious prosecution by the State Fire Marshal's Office and Robert McMahon, State Fire Investigator; and (VI) violation of 42 U.S.C. § 1983 by Robert McMahon.

Counts III, IV, V, and VI were dismissed prior to trial, thus leaving two counts, both against Farm Family alone: (I) breach of contract; and (II) statutory interest and attorney fees under the late payment of claims statute [2] on which the jury returned a verdict by use of the following special verdict form:

1. Do you find that it is more likely than not that Wayne Marquis caused the fire at the potato house in question?

[Answer=No]

2. Did Farm Family investigate the fire claims in bad faith (breach its duty to act fairly and in good faith) prior to August 20, 1987, the date when the plaintiff did not submit to an examination under oath and to produce documents as requested?

[Answer=Yes]

3. Did the plaintiff Wayne Marquis present a fraudulent claim against the defendant Farm Family, as regard to the quantity or quality of the potatoes in question?

[Answer=No]

4. What amount of damages, if any, are Plaintiffs entitled to recover from the Defendant, Farm Family, for loss of personal property insured under the policy and for consequential damages as a result of the fire?

[Answer=$680,000].

Having moved for a directed verdict at the close of the evidence, after the jury's verdict, Farm Family moved for a judgment notwithstanding the verdict, or, in the alternative, a motion for a new trial or remittitur. The court (1) entered judgment for Farm Family on Count II, finding that neither Wayne nor Alice was entitled to recover interest and attorney fees under the late payment of claims statute, 24–A M.R.S.A. § 2436; (2) concluded that neither Wayne nor Alice was entitled to recover under the unlawful claims practices statute, 24–A M.R.S.A. § 2436–A, because plaintiffs did not allege a claim based on that statute; and (3) granted Farm Family's motion for a new trial on damages, unless the plaintiffs remitted $610,629, an amount representing the plaintiffs' claim for lost profits, on the ground that the evidence of lost profits offered by the plaintiffs at trial was too speculative.

The plaintiffs then filed a motion for reconsideration, requesting that the court reinstate the jury verdict of $680,000, or, in the alternative, amend its order from one of new trial/remittitur to one ordering a judgment notwithstanding the verdict in favor of Farm Family, to enable the plaintiffs to appeal without having to first retry the issue of damages. The court granted the plaintiffs' motion and converted its order to a judgment notwithstanding the verdict. This appeal and cross-appeal followed.

## I.

### *Breach of Contract*

#### A. *Farm Family's Cross–Appeal*

 The plaintiffs alleged in their complaint, and the jury found, that Farm Family breached the implied duty of good faith and fair dealing owed by an insurer to an insured. Farm Family first contends that since this case does not involve any third-party tort claimant, no implied duty of good faith and fair dealing exists in the present case. Specifically, Farm Family

---

**2.** The Superior Court also found that while Wayne may pursue the breach of contract claim under both insurance policies, Alice may maintain a breach of contract action only under the policy covering farm machinery and supplies, and not on the policy covering the potatoes, because she was not an "insured" under that policy. Similarly, the court found that Alice's claim under the late payment of claims statute only related to the policy covering farm machinery and supplies. We find no error in the court's determination. *See Hildebrand v. Holyoke Mut. Fire Ins. Co.,* 386 A.2d 329, 331 (Me. 1978).

argues that the fear that an insurer will not diligently and honestly negotiate a settlement with a third-party tort claimant, deciding to take its chances at trial and possibly exposing the insured to liability in an amount above the policy limit, is nonexistent in a first-party insurance situation. *See Linscott v. State Farm Mutual Auto. Ins. Co.*, 368 A.2d 1161, 1163–64 (Me.1977). We disagree and conclude that in every insurance contract an insurer owes a duty to act in good faith and deal fairly with its insured, even in the absence of a third-party tort claimant. *See Chiapetta v. Lumbermens Mutual Ins. Co.*, 583 A.2d 198, 202 (Me.1990). "The rationale which recognizes an ancillary duty on an insurance company to exercise good faith in the settlement of third-party claims is equally applicable and of equal importance when the insured seeks payment of legitimate damages from his own insurance company." *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 375 (1978). The duty to act in good faith arises at the time the parties enter into the insurance contract, and does not depend on who might be involved in any subsequent litigation.

■ Farm Family next contends that, even if it owed a duty to act in good faith and deal fairly, nevertheless, there exists insufficient evidence to support the jury's finding that it breached the duty. We first note that this question was properly before the jury. *See, e.g., deVries v. St. Paul Fire and Marine Ins. Co.*, 716 F.2d 939, 944 (1st Cir.1983) (whether insurer breached implied covenant of good faith and fair dealing in connection with fire policy was question for jury in insured's action seeking proceeds of policy and further damages resulting from breach of covenant). Furthermore, we must sustain the verdict "if any credible evidence, and all justifiable inferences drawn from such evidence, viewed in the light most favorable to the plaintiff, support the verdict." *Redlon's Inc. v. Gilman, Inc.*, 485 A.2d 661, 662 (Me.1984).

■ The evidence, when viewed in the light most favorable to the plaintiffs, sup-ports the jury's finding that Farm Family breached its duty to act in good faith and deal fairly by conducting its investigation of the cause and origin of the fire in bad-faith. Specifically, Susan McBride's failure to interview the couple with whom Wayne and Alice played cards on the night of the fire and her failure to inform Farm Family of a police officer's statements that controverted evidence that Wayne was at the potato house on the night in question, evidence Farm Family's bad faith investigation. Moreover, McBride failed to tell the fire investigator that just four months prior to this fire, Farm Family paid a fire claim caused by a faulty kerosene heater in the very same potato house. Marlin Cook, the claims supervisor, also failed to look into Farm Family's files to check Wayne's past fire claims history, which would have revealed the claim paid just four months earlier. McBride further failed to interview Arsene LaPlante, who stated that Wayne's potatoes were in good condition, a fact that would have negated Wayne's motive to commit the fire, and she failed to substantiate a rumor that Wayne's potatoes were frozen in storage, even though she included the rumor in her report. The jury heard the testimony of all the witnesses, and was free to judge their credibility. The jury heard how McBride relied on rumors without attempting to verify their accuracy, and on opinions without inquiring into the facts on which the opinions were based. We conclude, therefore, that the verdict was based on sufficient evidence.

■ Farm Family next argues that Wayne's failure to submit to an examination under oath relieves it from any obligation to pay under the policy regardless of any breach by Farm Family of its duty to act in good faith and deal fairly, asserting that Wayne's duty to submit to an examination under oath was independent of its obligation to act in good faith. We disagree.

The Maine Insurance Code sets forth the language that must be included in a fire insurance policy issued in this State. *See* 24–A M.R.S.A. § 3002 (1990). Under the

paragraph entitled "Requirements in case loss occurs", the language reads:

> The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe to the same. . . .

*Id.*[3] Farm Family requested that Wayne submit to an examination under oath, and produce certain documents. Wayne's attorney notified Farm Family that: "After [Wayne] is vindicated in criminal court, he will be happy to make himself available to you for your requested statement." Farm Family responded with the following: "Your client's claim has been rejected because he has refused to cooperate with the company in appearing for an examination under oath . . . [y]our client's refusal to cooperate as aforesaid constitutes a breach of the insurance policy sufficient to bar his claim in its entirety."

Wayne's decision to postpone the examination, as opposed to flatly refusing to ever submit, was reasonable under the circumstances. "A fire policy requiring the insured to submit to an examination must be reasonably interpreted and cannot be used indiscriminately against the insured." 5A Appleman, *Insurance Law and Practice* § 3550, at 553 (1970) (footnote & citations omitted). Neither the particular contract at issue here, nor the statute mandating this clause, 24–A M.R.S.A. § 3002, contains any time limits on when the examination under oath must take place, or when the insured must submit to such an examination. When neither the policy nor the statute specifies a time for performance, "a 'reasonable time' is implied." *Maine Mutual Fire Ins. Co. v. Watson*, 532 A.2d 686, 689 (Me.1987). *See Beckley v. Ostego County Farmers Coop. Fire Ins. Co.*, 3 A.D.2d 190, 159 N.Y.S.2d 270, 275 (1957) (request for examination must be made within reasonable time). Accordingly, the insurer's request must be reasonable, and,

in addition, the insured's response to the request must also be reasonable under the circumstances.

Wayne's decision to postpone the examination until the conclusion of his criminal case, on the advice of his attorney, was reasonable in these circumstances. "Otherwise any insurer may be able to escape liability whenever its insured is falsely accused of arson and happens to have a capable criminal attorney." 5A Appleman at § 3549, at 117 (Supp.1992). Wayne was interviewed shortly after the fire by Farm Family's investigator, and testified under oath at his deposition and at trial. It is also significant that Wayne did not unconditionally refuse Farm Family's request; rather, he merely wanted to delay the examination until the criminal case ended. "There must be, on the part of the insured, an offer to submit to examination as soon as he was able." *Id.* at § 3550, at 555 (1970) (footnote & citations omitted). *See, e.g., Home Ins. Co. v. Olmstead*, 355 So.2d 310, 313 (Miss.1978) (if insured, for valid reason, is unable to attend examination under oath, it is incumbent upon insured to offer to submit to examination at later time). In short, Wayne's failure to submit to an examination under oath is not fatal when he has not unconditionally refused to submit at all, and has further expressed willingness to submit after the criminal trial. *See McCullough v. Travelers Companies*, 424 N.W.2d 542, 545 (Minn.1988) (court distinguished cases where insured exhibited an unwillingness to submit to examination under oath whether by express refusal or through pattern of non-cooperation).

■ Finally, Farm Family has failed to demonstrate any prejudice as a result of the postponement of Wayne's examination under oath until the conclusion of the criminal proceedings. In fact, waiting until a final adjudication on the merits in Wayne's criminal case aids Farm Family by shedding light on the ultimate question with

---

**3.** The statute further requires the policy to include the following: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and unless commenced within two years next after inception of the loss." 24–A M.R.S.A. § 3002.

which it should be concerned, namely, whether the insured intentionally burned his potatoes and farm equipment to collect the insurance proceeds. In a related context, under Maine law, "to avoid either its duty to defend or its liability thereunder based on an insured's delay in giving notice, a liability insurer must show (a) that the notice provision was in fact breached, and (b) that the insurer was prejudiced by the insured's delay." *Ouellette v. Maine Bonding & Cas. Co.*, 495 A.2d 1232, 1235 (Me.1985). The basis for this requirement of prejudice is that "the traditional result of forfeiture is an undeserved windfall to the insurer." *Id.* (citing *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193, 196–97 (1977)). Similarly, in the present case, Farm Family must meet its burden of demonstrating prejudice before it is relieved from its obligation to pay based on the insured's request to delay an examination under oath. *See Pickwick Park, Ltd. v. Terra Nova Ins. Co.*, 602 A.2d 515, 520 (R.I.1992) ("An insurance company must show that it has been prejudiced before the insured's failure to comply with a policy's procedural requirement will bar recovery"); *see also Bowyer by Bowyer v. Thomas*, 423 S.E.2d 906, 910–11 n. 9 (W.Va.1992) (citing long list of cases following general rule that before policy is voided because of insured's failure to cooperate, such failure must be substantial and prejudice insurer). Having failed to meet that burden, Farm Family may not avoid payment under the policy.

For the foregoing reasons, we conclude that, contrary to Farm Family's contentions on its cross-appeal, the trial court did not err in refusing to hold that Farm Family was relieved from any obligation under the policy due to Wayne's failure to submit to an examination under oath.[4]

### B. *Plaintiffs' Direct Appeal*
#### (i) *damages for lost profits*

■ The plaintiffs contend on appeal that the court erred in striking so much of

the $680,000 awarded by the jury as constituted lost profits. We agree. "Subject to limitations of avoidability and unforeseeability, an injured party is entitled to recover for all loss actually suffered as a result of the breach [of contract]." *Marchesseault v. Jackson*, 611 A.2d 95, 98 (Me. 1992). "The measure of damages as determined by a jury is entitled to great deference." *Poulette v. Herbert C. Haynes, Inc.*, 347 A.2d 596, 599 (Me.1975). As we have said on numerous occasions,

> [d]amage assessment is the sole province of the jury and the amount fixed must stand unless it can be demonstrated that, the jury acted under some bias, prejudice or improper influence, or made some mistake of law or fact ... It is not for the reviewing court to interfere merely because the award is large, or because the court would have awarded less. Unless a verdict very clearly appears to be excessive, upon any view of the facts which the jury are authorized to adopt, it will not be disturbed....

*Id.* at 599–600 (citations omitted). *See C.N. Brown Co. v. Gillen*, 569 A.2d 1206, 1209 (Me.1990) (same).

■ Damages for loss of "[p]rospective profits are allowable only if they can be estimated with reasonable certainty." *Ginn v. Penobscot Co.*, 334 A.2d 874, 887 (Me.1975). *See Eckenrode v. Heritage Management Corp.*, 480 A.2d 759, 765 (Me. 1984). Contrary to the findings of the trial court, the evidence introduced by the plaintiffs in support of their claim for lost profits was not too speculative. The testimony of the plaintiffs' potato expert, the State Potato Specialist of the University of Maine, was based on carefully prepared data based on governmental statistics, including the average production cost for table stock potatoes in Aroostook County, and the average yield for Maine potatoes as published by the Crop Reporting Service, reduced by a shrinkage factor. Based on that evidence, we cannot say that the jury "acted under some bias, prejudice or

---

**4.** We also reject Farm Family's assertion that the jury incorrectly determined that Wayne did not fraudulently misrepresent the quality and

quantity of the potatoes lost in the fire. The jury's finding on that issue is supported by competent evidence in the record.

improper influence, or made some mistake of law or fact" in reaching their verdict. *See Poulette*, 347 A.2d at 599. Rather, there existed a sufficient degree of reasonable certainty on which the jury could base an award for lost profits. Accordingly, the trial court erred in striking the plaintiffs' lost profits from the jury award.

### (ii) *damages for severe emotional distress*

The plaintiffs also contend that the court erred in striking from the breach of contract action their claim for damages resulting from severe emotional distress. As a general rule, in order to recover for mental or emotional distress suffered as a result of a breach of contract, the plaintiff must suffer some accompanying physical injury, or the contract must be such that a breach of it will result in a serious emotional disturbance, such as contracts between carriers and innkeepers, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. *Rubin v. Matthews Intern. Corp.*, 503 A.2d 694, 696 (Me.1986). Since the plaintiffs did not suffer any physical injury, and since an insurance contract is not one of those "special" types of contracts warranting damages for a severe emotional disturbance, we conclude that the Superior Court correctly dismissed the plaintiffs' request for such damages in this contract action.

## II.

### *Statutory Interest and Attorney Fees*
#### A. *Late Payment Statute*

The plaintiffs contend that the court erred in refusing to award them statutory interest and attorney fees under the late payment of claims statute, 24–A M.R.S.A. § 2436. That statute provides for the payment by an insurer of interest and attorney fees on certain claims that are not timely paid. *See Burne v. John Hancock Mut. Life Ins. Co.*, 403 A.2d 775, 778 (Me.1979). A fire insurer has sixty days after receipt of an insured's proof of loss to either pay the claim, dispute the claim, or

request "reasonable additional information" from the insured. *Chiapetta v. Lumbermens Mut. Ins. Co.*, 583 A.2d 198, 200 (Me.1990). A request for an examination under oath, and for production of documents, can constitute "reasonable additional information" within the meaning of section 2436. *Id.* After requesting such additional information, a claim does not become overdue until sixty days following the insurer's receipt of the additional information. Farm Family requested an examination under oath, and the production of documents. Since Wayne neither submitted to an examination under oath, nor produced the requested documents, the plaintiffs' claim never became "overdue" under the late payment statute.

The plaintiffs argue that the jury's bad-faith finding necessarily entitles them to the statutory interest and attorney fees. Since section 2436 is penal in nature, we apply a strict construction analysis. *See Burne*, 403 A.2d at 777. A requirement of good faith is not provided in section 2436, and, in the absence of any express legislative direction indicating such a requirement, we decline to imply such a condition. Accordingly, as Farm Family technically complied with the requirements of section 2436, the court did not err in refusing to award statutory interest and attorney fees.

#### B. *Unfair Claims Practices Statute*

The plaintiffs also claim entitlement to statutory interest and attorney fees under the unfair claims practices statute, 24–A M.R.S.A. § 2436–A. This demand was first made after the jury's verdict. Since the plaintiffs had not pled unfair claims practices, the court refused to permit an amendment to the complaint to add a claim under section 2436–A. We agree with the trial court. Not only did the plaintiffs fail to plead a cause of action generally under section 2436–A, the plaintiffs failed to specifically point to which of the four subsections of section 2436–A they claim Farm Family violated. The unfair claims practices statute sets forth four separate bases for an award of statutory inter-

est and attorney fees, and the failure by the plaintiffs to allege and prove a specific violation precludes recovery under the statute. Accordingly, the trial court correctly denied awarding statutory interest and attorney fees on the basis of a violation of section 2436–A.

## III.

### *Tort of Bad Faith*

The plaintiffs finally contend that the trial court erred in dismissing their claim for damages resulting from Farm Family's commission of the tort of bad faith.[5] The court concluded that the tort of bad faith is not recognized under Maine law. This is our first opportunity to address this issue and we expressly refuse to recognize an independent tort of bad faith resulting from an insurer's breach of its duty to act in good faith and deal fairly with an insured.

An insurer's duty to act in good faith and deal fairly "derives from a covenant implicit in the provisions of the insurance contract...." *Linscott v. State Farm Mut. Auto. Ins. Co.*, 368 A.2d 1161, 1163 (Me.1977). "The obligation arises from the agreement and extends only to situations connected with the agreement." *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676 (4th Cir. 1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987). "[T]he obligation is imposed by the parties themselves and is woven within the fabric of their contractual relationship." *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 864 (Wyo.1990) (Golden, J., dissenting). Thus, the traditional remedies for breach of contract are available to the insured in the event an insurer breaches its contractual duty to act in good faith, including full general and consequential damages. In addition, the legislature has provided the additional remedies set forth in the late payment of claims statute, *see* 24–A M.R.S.A. § 2436, and the unfair claims practices statute, *see* 24–A M.R.S.A. § 2436–A, both of which provide for statutory interest and attorney fees in certain instances for improper actions of an insurer. Allowing, in addition, an independent tort action in cases such as this "might well thwart the legislature's intent to craft a comprehensive insurance code, and could subject insurance companies to multiple and inconsistent liability." *Seabury Housing Associates v. Home Ins. Co.*, 695 F.Supp. 1244, 1249 (D.Me.1988).

We further reject the notion that an independent tort action provides an additional impetus for good faith on the part of insurers. *See McCullough*, 789 P.2d at 859. Rather,

> [i]n view of the broad range of compensatory damages available in a contract action and in view of the statutorily provided remedies of interest on the judgment and attorney[ ] fees, [we] believe sufficient motivation presently exists to stifle an insurer's bad faith tendencies without the further imposition of the specter of punitive damages under an independent tort cause of action.

*Id.* at 866 (Golden, J., dissenting).

We therefore refuse to adopt an independent tort action for an insurer's breach of the implied contractual obligation to act in good faith and deal fairly with an insured, and limit an insured's remedies for breach of the duty to the traditional remedies for breach of contract, and the additional statutory remedies provided in the insurance code.

The entry is:

Judgment vacated. Remanded with instruction to reinstate the jury verdict and the judgment thereon. Affirm the judgment of the Superior Court in all other respects.

All concurring.

---

5. The court's dismissal of the breach of fiduciary duty portion of count III of the plaintiffs' amended complaint is not at issue on appeal.