Swift River . . . v. Zurich Ins.      CV-95-594-SD  09/16/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Swift River Hafslund Co., et al


         v.                                  Civil No. 95-594-SD


Zurich Insurance Co.;
Philadelphia Gear Corp.


O R D E R


     In this diversity action, plaintiffs Swift River Hafslund,
et al. (collectively, SRH), seek relief on a number of causes of
action against defendants Zurich Insurance Company and
Philadelphia Gear Corporation (PGC).  The claims arise out of the
failure of a gear box which was manufactured by PGC and used in
plaintiffs' hydroelectric plant in Errol, New Hampshire.  Zurich
issued the insurance policy which covered the Errol plant.
Plaintiffs allege, inter alia, that Zurich breached the insurance
contract by failing to make complete payments for losses suffered
by the plaintiffs as a result of the gear box failure.

     Plaintiffs filed their complaint in the United States
District Court for the District of Maine on May 22, 1995,
bringing claims against Zurich alone.  On May 24, 1995,
plaintiffs filed their first amended complaint, naming PGC as a

co-defendant.  The Maine federal court (Carter, C.J.) transferred the case to this district on November 14, 1995.  See Memorandum of Decision and Order Conditionally Granting Joint Motion to Transfer Venue, Nov. 14, 1995, docket no. 16.  SRH filed their second amended complaint in this court on January 22, 1996.

Currently before the court is Zurich's motion to dismiss Counts III-VI of the second amended complaint.  Also before the court is PGC's motion for summary judgment[1] on Counts VII and IX, to which plaintiffs object, in part.[2]

Background[3]

The plaintiffs, owners and operators of a hydroelectric plant located in Errol, New Hampshire, purchased from defendant Zurich an "all risk" property insurance policy covering property damage and lost income due to business interruption.  The policy also covered other SRH operations in Maine and New Hampshire.

On or about July 7, 1994, plaintiffs discovered that a gear

---

[1]Pursuant to Rule 12(b), Fed. R. Civ. P., the court has previously converted PGC's motion to dismiss Count IX into a motion for summary judgment and has given the parties appropriate time to supplement their filings.  See Order of July 10, 1996.

[2]Both Zurich and PGC have also filed reply memoranda to plaintiffs' objections.

[3]The facts in this section are taken from the second amended complaint unless otherwise noted.

2

box manufactured by defendant PGC was broken. As a result of the failed gear box, the Errol plant was out of operation from July 7, 1994, to September 8, 1994, during which time PGC made temporary repairs to the gear box. The gear box was reinstalled after the temporary repairs were completed, and the plant resumed power generation, subject to some restrictions, on September 9, 1994. On January 8, 1995, the gear box was again taken out of service, this time to be fitted with replacement gears manufactured by PGC. The plant remained out of service until March 16, 1995.

Plaintiffs claim that Zurich was obligated under the contract to indemnify them for an amount in excess of $435,000 for property damage, and an amount in excess of $690,000 for lost income from business interruption. Zurich has made payments to plaintiffs of $346,995.24 for property damage and $271,932 for lost income due to business interruption. Plaintiffs maintain that under the insurance contract Zurich owes an additional $88,000 for property damage and $420,000 for lost profits. Zurich refuses to make the payments and invokes two clauses of the contract: (1) an exclusion for loss or damage caused by faulty workmanship, material, construction, or design, and (2) a limitation on coverage for business interruption to the length of time required, with the exercise of due diligence, to repair the

3

damaged property.

## Discussion

### 1. Rule 12(b)(6) Standard

To resolve defendant PGC's Rule 12(b)(6) motion, the court must "take the well-pleaded facts as they appear in the complaint, extending plaintiff[s] every reasonable inference in [their] favor." Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993) (citing Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992)). A Rule 12(b)(6) dismissal is appropriate "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

### 2. Count III: Choice-of-Law

The threshold question is which state's--Maine's or New Hampshire's--choice-of-law rules should be applied to determine the law governing Count III, which seeks consequential damages associated with Zurich's breach of contract.

When making choice-of-law determinations, "[a] federal court which exercises diversity jurisdiction over state law claims must

4

apply the choice-of-law rules of the state in which it sits."
Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 4
(1st Cir. 1994) (citing Klaxon v. Stentor Elec. Mfg. Co., 313
U.S. 487 (1941)).  The determination of which forum's choice-of-
law rules apply after transfer of venue depends on the grounds
for the transfer.  The choice-of-law rules of the transferor
forum govern in a case transferred pursuant to 28 U.S.C. § 1404,
regardless of whether plaintiff or defendant moved to transfer.
See Ferens v. John Deere Co., 494 U.S. 516, 518-31 (1990).[4]  In
contrast, the choice-of-law rules of the transferee forum govern
in a case transferred pursuant to section 1406(a).  Muldoon v.
Tropitone Furniture Co., 1 F.3d 964, 967 (9th Cir. 1993); MOORE'S,
supra note 4, ¶ 0.345[.4-5]; WRIGHT, supra note 4, § 3827, at 267.

SRH originally filed the complaint in the United States
District Court for the District of Maine.  SRH, joined by PGC,
subsequently moved that court to transfer venue pursuant to
either 28 U.S.C. § 1404(a) or § 1406(a).[5]  The court granted the

---

[4]See also 1A, Part 2, JAMES WM. MOORE, ET AL., MOORE'S FEDERAL
PRACTICE ¶ 0.345[.4-5] (2d ed. 1989); 15 C. WRIGHT, A. MILLER & E.
COOPER, FEDERAL PRACTICE AND PROCEDURE § 3827, at 267 (1986, 1996
Supp.).

[5]28 U.S.C. § 1404 provides, in relevant part:

> (a) For the convenience of parties and
> witnesses, in the interest of justice, a district
> court may transfer any civil action to any other
> district or division where it might have been

5

motion, concluding that transfer would be appropriate under either section 1404(a) or section 1406(a). The court did not determine whether venue was properly laid in that district. <u>See</u> Order of November 14, 1995, at 4 n.3 (Carter J.).

Ordinarily, the Maine federal court's failure to specify which rule it was using to transfer would create a difficulty in the determination of which state's choice-of-law rules are applicable to the case at bar. However, as will be shown, the applicable choice-of-law analysis of both New Hampshire and Maine yields the same result, and therefore it is immaterial which state's rules are applied.

Zurich contends Count III should be dismissed because consequential damages arising out of the alleged breach of an insurance contract cannot be recovered under Maine or New Hampshire law. The court must first determine whether, under relevant choice-of-law rules, Maine or New Hampshire law controls the contract issues in this case. Then, the court will decide

---

brought.

28 U.S.C. § 1406 provides, in relevant part:

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

whether the applicable law allows for the recovery of consequential damages.

In both Maine and New Hampshire, casualty insurance contracts are generally governed by the substantive law of the state which the parties understood to be "the principal location of the insured risk."  See Maine Drilling & Blasting v. Insurance Co. of North Am., 34 F.3d 1, 3 n.1 (1st Cir. 1994) (citing Baybutt Constr. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 917-19 (Me. 1983), overruled on other grounds, Peerless Ins. Co. v. Brennon, 564 A.2d 383 (Me. 1989)); Consolidated Mut. Ins. Co. v. Radio Foods Corp., 108 N.H. 494, 497, 240 A.2d 47, 49 (1968).

Both Maine and New Hampshire have also addressed multiple-risk contracts, like the one here, where the location of the insured risk is spread over several states:

> In a multiple risk policy which, as in the instant case, was clearly intended to afford comprehensive liability in the three states of Maine, New Hampshire and Vermont, the authorities have treated such policies in respect to the location of a particular risk in one of the states covered by the contract as if a separate policy had been issued to cover only the risks in that state.  The rationale for such a holding is based on the fact that the location of the insurance risk in a particular state pinpoints the jurisdiction that has the greatest interests in the contract and any issues arising therefrom.

Baybutt, supra, 455 A.2d at 919 (emphasis added) (citing Consolidated Mut. Ins. Co., supra, 108 N.H. at 240, 240 A.2d at

7

49; RESTATEMENT (SECOND) OF CONFLICTS, supra, § 193, cmt. f). Accord Gates Formed Fibre Prods. v. Plasti-Vac, Inc., 687 F. Supp. 688, 690 (D. Me. 1988); Ellis v. Royal Ins. Co., 129 N.H. 326, 332, 530 A.2d 303, 307 (1987) (insurance policy covering "a multitude of risks in various [s]tates" should be governed by New Hampshire law because particular risk at issue was located in New Hampshire).

The insurance contract giving rise to SRH's claims is a multiple-risk policy covering sites in New Hampshire and Maine. Zurich argues that the parties negotiated and executed the contract in Maine and that SRH's principal place of business was in Portland, Maine. Zurich then contends that because "the principal location of the insured risk" was in Maine, Maine law should govern.

However, given that the policy covered multiple risks and that the insurance contract specifically lists the Errol, New Hampshire, site as an insured risk, the court must construe the policy as if Zurich had issued a separate policy covering that site. Therefore, under both Maine's and New Hampshire's choice-of-law rules, New Hampshire law governs the contract issues in this case.[6]

---

[6]To the extent that Zurich relies on Maine Drilling for the proposition that Maine was the principal location of the insured risk, the court notes that Maine Drilling is inapposite. Unlike

8

With respect to consequential damages, the New Hampshire Supreme Court has held that "because an insurance policy is a contract, its breach may result in an award of consequential damages if they were foreseeable and can be proved." A.B.C. Builders, Inc. v. American Mut. Ins., 139 N.H. 745, 751, 661 A.2d 1187, 1192 (1995) (citing, inter alia, Lawton v. Great South West Fire Ins. Co., 118 N.H. 607, 610-11, 392 A.2d 576, 579-80 (1978)). Accordingly, Zurich's motion to dismiss Count III of the second amended complaint is denied.

3. Counts IV and V, Unfair Claims Practices

Counts IV and V of SRH's second amended complaint allege that Zurich committed unfair claims practices in violation of Maine Revised Statutes Annotated tit. 24-A, § 2436-A (West 1996) and the New Hampshire Consumer Protection Act, Revised Statutes Annotated (RSA) 358-A (1995), respectively. Zurich argues that the claim is governed by the law of Maine because it believes Maine law governs the contract, and therefore Count V should be dismissed. Plaintiff, predictably, argues that New Hampshire law governs, and states that it will be generous enough to withdraw

_____

Baybutt and this case, where the locations of the multiple risks were specified in the contract, Maine Drilling involved a general liability policy which did not cover specific sites outside of the insured's home state. See Maine Drilling, supra, 34 F.3d at 3 n.1.

9

the Maine count if the court agrees.  Unfortunately, neither side's position has the benefit of reasoned or developed argumentation, and therefore they have left the court to its own devices in approaching the problem.  See Crellin Technologies, supra, 18 F.3d at 11 ("a defendant in a contract case governed by one state's law nonetheless may be subject to the provisions of another state's unfair trade practices statute").

For choice-of-law purposes, a claim made pursuant to a consumer protection statute may be treated as a tort or a contract, depending upon the nature of the claim.  Compare id. ("We hold that, at a minimum when a [claim under the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A] and the requested remedy are highly analogous to a tort claim and remedy, the chapter 93A claim should be considered as a tort for choice-of-law purposes.") with Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 610 (1st Cir. 1993) (where chapter 93A claim is "essentially reduce[d]" to contract claim, choice-of-law provision pertaining to rights and obligations of parties under contract would be honored).  Accord Scully Signal Co. v. Joyal, 881 F. Supp. 727, 742 (D.R.I. 1995); but see Computer Sys. Eng'g, Inc. v. Qantel Corp., 571 F. Supp. 1365, 1371 (D. Mass. 1983) (holding chapter 93A claims should be uniformly treated as torts for choice-of-law purposes), aff'd,

10

740 F.2d 59 (1st Cir. 1984).

The mere presence of improper motivation will not necessarily cause a consumer protection claim to be treated as a tort for choice-of-law purposes.  See Scully Signal Co., supra, 881 F. Supp. at 742.  Instead, even where improper motivation has been alleged, it is possible that the claim is still an "embroidered" breach of contract claim that therefore should be treated like a contract.  For example, there is a distinction between willfully breaching a contract and fraudulently forming a contract, the former being more akin to a contract claim and the latter being a tort for choice-of-law purposes.  See Northeast Data Sys., Inc., supra, 986 F.2d at 609-11.

For example, in Scully, the court found that the consumer protection statute claim should be treated like a contract for choice-of-law purposes.  There, the alleged intentional conduct pertained to defendant's use of plaintiff's trade secrets and confidential proprietary information in violation of a contractual agreement.  See Scully, supra, 881 F. Supp. at 742.  The court found that therefore the claim resembled a breach of contract more than a tort.

While plaintiff has included allegations of willfulness and intentionality in its claims under the unfair trade practices counts, it appears that such contentions concern only the manner

11

in which Zurich <u>breached</u> the contract. For example, plaintiff alleges that Zurich misrepresented its services by "refusing to reimburse the Plaintiffs for property damage and business interruption loss." Second Amended Complaint ¶ 42. Plaintiff also alleges that Zurich misrepresented its policy agreements "by failing to pay the Plaintiffs' damages in accordance with the terms of the policy." <u>Id.</u> ¶ 43.

Consequently, the court finds and herewith rules that as plaintiffs' claims under the consumer protection statutes are predominantly contractual in nature, they are governed by the identical choice-of-law analysis the court has previously applied to plaintiffs' contract claim. Therefore, in this case, as New Hampshire law governs the contract claim, it also supplies the governing law for the Consumer Protection Act claim. Count IV, which is brought under Maine law, is accordingly dismissed.[7]

Anticipating that New Hampshire law might govern this cause of action, Zurich argues that plaintiffs' RSA 358-A claim is preempted by New Hampshire's Unfair Insurance Trade Practices statute, RSA 417. Zurich contends that RSA 417 defines unfair insurance practices and provides "the sole and exclusive remedy for an insured aggrieved by the unfair claims and practices of

---

[7]Defendant also makes a substantive challenge to Count IV; however, such argument is now mooted by the dismissal.

its insurer."  Zurich's Reply Memorandum at 5.

It has previously been held that the mere applicability of RSA 417 to particular conduct does not, a fortiori, preclude a cause of action under the New Hampshire Consumer Protection Act (CPA).  See WVG v. Pacific Ins. Co., 707 F. Supp. 70, 71 (D.N.H. 1986) (providing detailed discussion of issue); cf. Gilmore v. Bradgate Assocs., Inc., 135 N.H. 234, 238, 604 A.2d 555, 557 (1992) (given the broad wording of the CPA, "the legislature . . . could [not] have intended to exclude from the protection of the act the large number of industries which are subject to regulation in this State simply because the legislature has provided for regulation of that industry within a statutory framework").

The CPA does, however, contain an exemption clause, which provides in relevant part:

> **Exempt Transactions; etc.**  The following transactions shall be exempt from the provisions of this chapter:
> I.  Trade or commerce otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of this state or of the United States; . . . .

RSA 358-A:3.  The purpose behind this clause is to avoid "direct conflict with other regulatory schemes."  See Gilmore, supra, 135 N.H. at 239, 604 A.2d at 557.  Accord WVG, supra, 707 F. Supp. at 72.  Thus, so long as RSA 417 does not outright permit defendants

13

to perform the acts complained of, it appears that plaintiffs would be free to pursue a remedy under the CPA.

As Zurich has not argued that the acts complained of are "permitted" by RSA 417 (nor does it appear to the court from its very cursory review that such is the case), the court rejects Zurich's argument that the mere existence of a scheme regulating the conduct of insurance in this state would preclude a cause of action brought pursuant to the CPA based on unfair insurance practices. Accordingly, Zurich's motion to dismiss Count V is denied.


## 4. Count VI: Bad Faith

Count VI seeks compensatory and punitive damages resulting from Zurich's alleged "bad faith" failure to make full and timely payments under the insurance contract. Zurich contends that neither New Hampshire nor Maine law provides for a cause of action sounding in tort and based on the alleged bad faith of an insurer in breaching a first-party insurance contract.[8]

The New Hampshire Supreme Court in <u>Lawton v. Great Southwest</u>

---

[8]Because the ultimate result would be the same regardless of whether Maine or New Hampshire law is applied, it is not necessary for the court to rule on the choice-of-law question. <u>See, e.g.</u>, <u>Fashion House, Inc. v. K-Mart Corp.</u>, 892 F.2d 1076, 1092 (1st Cir. 1989) (citing <u>Hart Eng'g v. FMC Corp.</u>, 593 F. Supp. 1471, 1477 n.5, 1481 (D.R.I. 1984)).

Fire Ins. Co., 118 N.H. 607, 614-15, 392 A.2d 576, 580-81 (1978), addressed an insured's allegations of the tort of bad faith by the defendant insurer. Although recognizing that the tort of bad faith may exist in the third-party insurance context, the court declined to extend the tort of bad faith to first-party claims such as those in the case at bar. Id. at 614, 392 A.2d at 581 ("We hold that allegations of an insurer's wrongful refusal or delay to settle a first-party claim do not state a cause of action in tort."). Accord Jarvis v. Prudential Ins. Co., 122 N.H. 648, 652, 448 A.2d 407, 409 (1982). In declining to recognize a cause of action in tort for bad faith by an insurer in the first-party context, the court recognized "that the legislature has established mechanisms [in RSA 417 and RSA 407] designed to deal with insurer malfeasance in this area, which . . . vitiates the need for recognition of a new cause of action in tort." Lawton, supra, 118 N.H. at 614, 392 A.2d at 581.

Similarly, Maine also does not allow recovery for the tort of bad faith. In Marquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 652 (Me. 1993), the court "refuse[d] to recognize an independent tort of bad faith resulting from an insurer's breach of its duty to act in good faith and deal fairly with an insured." Id. In particular, the court noted that the insured already had access to the full range of traditional remedies for

15

breach of contract, as well as statutory remedies.  <u>Id.</u>

Accordingly, under both New Hampshire and Maine law, an insurer has no independent tort duty to act in good faith when dealing with an insured in the context of a first-party claim. Count VI is therefore dismissed.


## 5.  PGC's Motion for Summary Judgment

Defendant PGC has moved to dismiss Counts VII (negligence) and IX (New Hampshire Consumer Protection Act, RSA 358-A:2, V and VII) of plaintiffs' second amended complaint.  As the plaintiffs agree that such count should be dismissed, the court finds and rules that Count VII of the complaint is dismissed.  As for Count IX, the court, having previously converted defendant's motion to dismiss to a motion for summary judgment, will now address such claim.


### a.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; <u>Lehman v. Prudential Ins. Co. of Am.</u>, 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" <u>Stone & Michaud Ins., Inc. v. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." <u>Celotex Corp. v. Catrett,</u>, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993) (quoting <u>Anderson</u>, <u>supra</u>, 477 U.S. at 256), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." <u>Id.</u> at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. <u>Anderson</u>, <u>supra</u>, 477 U.S. at 255.


b. The Merits

PGC argues that as the evidence does not support that it

17

acted with bad faith or improper motive, it is entitled to summary judgment on Count IX, the claim under the New Hampshire Consumer Protection Act.

The Consumer Protection Act prohibits "any person [from using] any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2. The Act provides that unfair or deceptive practices include "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have," RSA 358-A:2, V, and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," RSA 358-A:2, VII.

In general, a breach of warranty constitutes a violation of the Consumer Protection Act.[9] See Maillet v. ATF-Davidson Co., 552 N.E.2d 95, 100 (Mass. 1990) (interpreting Mass. Gen. L. ch.

_____

[9]New Hampshire often looks to courts interpreting Massachusetts G.L. ch. 93A for guidance when interpreting RSA 358-A. See Roberts v. General Motors Corp., 138 N.H. 532, 538-39, 643 A.2d 956, 960 (1994); Chase v. Dorais, 122 N.H. 600, 602, 448 A.2d 390, 391-92 (1982); accord Curtis Mfg. Co. v. Plasti-Clip Corp., 888 F. Supp. 1212, 1227-28, n.12 (D.N.H. 1994); Donovan v. Digital Equip. Corp., 883 F. Supp. 775, 786 (D.N.H. 1994).

18

93A). In addition, "it is not a defense to a c. 93A claim that the defendant's conduct was negligent rather than intentional." Id. (quotation omitted). "[N]either intent to engage in an unlawful act nor knowledge of its unlawfulness is required in order to establish liability.'" Id. However, although unnecessary to establish liability, willful or knowing violations of the statute are relevant to the determination of whether to award multiple damages. See Unit Owners Ass'n of Summit v. Miller, ___ N.H. ___, ___, 677 A.2d 138, 142 (1996).

PGC relies on a case that admittedly contains some language susceptible to the interpretation that a violation of RSA 358-A:2 requires a showing of bad faith, dishonesty, or an attempt to take unfair advantage. See Welch v. Fitzgerald-Hicks Dodge, Inc., 121 N.H. 358, 362, 430 A.2d at 144, 147 (1981) ("The plaintiffs presented no evidence, however, to establish that the defendants acted in bad faith, dishonestly, or in any way attempted to take unfair advantage of them."). However, the First Circuit, rejecting the notion that Welch requires such a showing, has distinguished Welch because there "the defendants complied with the literal requirements of their warranty." See Chroniak v. Golden Investment Corp., 983 F.2d 1140, 1147 n.14 (1st Cir. 1993).

Consequently, as it is unnecessary for SRH to establish

19

willfulness, bad faith, or bad motive on the part of PGC in order to recover under the New Hampshire Consumer Protection Act, PGC's argument fails as a matter of law, and its motion for summary judgment on Count IX of the second amended complaint is accordingly denied.

## Conclusion

Having ruled that New Hampshire should supply the governing law, the court grants in part Zurich's motion to dismiss (document 19). Zurich's motion is otherwise denied. Counts IV and VI of the second amended complaint are accordingly dismissed. Furthermore, PGC's motion for summary judgment (document 20) is granted as to Count VII but denied as to Count IX.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

September 16, 1996

cc: All Counsel

20